# EXHIBIT 1

**SUMMONS**
*(CITACIÓN JUDICIAL)*

SUM-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Charter Communications, Inc., individually and doing business as SPECTRUM and formerly doing business as TIME WARNER CABLE;
ADDITIONAL PARTIES ATTACHMENT FORM IS ATTACHED

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TARA BROADCASTING, L.L.C., a California Limited Liability Company

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

FEB 1 3 2018

Lucero Zuniga

S 2A

FEB 1 4 2018

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es)*

PSC 1 8 0 0 8 2 3

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE, DESERT DISTRICT
3255 EAST TAHQUITZ CANYON WAY, PALM SPRINGS, CALIFORNIA 92262

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*
LAW OFFICES OF CLARK GAREN, CLARK GAREN, CALIFORNIA BAR #50564, P. O. BOX 1790,
PALM SPRINGS, CALIFORNIA  92263

DATE: FEB 1 3 2018
*(Fecha)*

Clerk, by Lucero Zuniga , Deputy
*(Secretario)* *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

Charter Communications, Inc., individually and doing business as
3. ☒ on behalf of *(specify):* Spectrum and formerly doing business as Time Warner Cable
   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

CEB·com Essential Forms

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

2-14-18

SUM-200(A)

SHORT TITLE:

CASE NUMBER:
**PSC** 1 8 0 0 8 2 3

**INSTRUCTIONS FOR USE**

➤ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➤ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box.  Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Alexis Johnson, an individual; Keely Bostock, an individual; Deborah Picciolo, an individual;
DOES 1 through 1,000, inclusive,

Page_____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]
CEB Essential Forms
ceb.com

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-100**

# SUMMONS
## (CITACIÓN JUDICIAL)

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Charter Communications, Inc., individually and doing business as
SPECTRUM and formerly doing business as TIME WARNER CABLE;
ADDITIONAL PARTIES ATTACHMENT FORM IS ATTACHED

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TARA BROADCASTING, L.L.C., a California Limited Liability Company

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

FEB 1 3 2018

Lucero Zuniga

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER: **PSC 1 8 0 0 8 2 3**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE, DESERT DISTRICT
3255 EAST TAHQUITZ CANYON WAY, PALM SPRINGS, CALIFORNIA 92262

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
LAW OFFICES OF CLARK GAREN, CLARK GAREN, CALIFORNIA BAR #50564, P. O. BOX 1790,
PALM SPRINGS, CALIFORNIA    92263

---

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## INSTRUCTIONS FOR USE

➤ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➤ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff  ☑ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

Alexis Johnson, an individual; Keely Bostock, an individual; Deborah Picciolo, an individual;
DOES 1 through 1,000, inclusive,

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

| | |
|---|---|
| ☐ BANNING 135 N. Alessandro Rd., Banning, CA 92220 | ☐ MURRIETA 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 |
| ☐ BLYTHE 265 N. Broadway, Blythe, CA 92225 | ☑ PALM SPRINGS 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 |
| ☐ HEMET 880 N. State St., Hemet, CA 92543 | ☐ RIVERSIDE 4050 Main St., Riverside, CA 92501 |
| ☐ MORENO VALLEY 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553 | ☐ TEMECULA 41002 County Center Dr., #100, Temecula, CA 92591 |

RI-030

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, state bar number, and address)*:
LAW OFFICES OF CLARK GAREN,
CLARK GAREN, CALIFORNIA BAR #50564
P. O. BOX 1790,
PALM SPRINGS, CALIFORNIA  92263
TELEPHONE NO: (760) 323-4901      FAX NO *(Optional)*: (760) 288-4080
E-MAIL ADDRESS *(Optional)*:  clarkgaren@msn.com
ATTORNEY FOR *(Name)*: PLAINTIFF

FOR COURT USE ONLY

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

FEB 1 3 2018

Lucero Zuniga

PLAINTIFF/PETITIONER: TARA BROADCASTING, L.L.C., a California
Limited Liability Company
DEFENDANT/RESPONDENT: Charter Communications, Inc., etc., et. al.

CASE NUMBER:
PSC 1 8 0 0 8 2 3

**CERTIFICATE OF COUNSEL**

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☑ The action arose in the zip code of:   92258

☐ The action concerns real property located in the zip code of:

☐ The Defendant resides in the zip code of:

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 1.0015 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date  01/25/2018

CLARK GAREN
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY MAKING DECLARATION)

(SIGNATURE)

Page 1 of 1

Approved for Optional Use
Riverside Superior Court
I-030 [Rev: 08/15/13]

Martin Dean's
ESSENTIAL FORMS™

CERTIFICATE OF COUNSEL

Local Rule 1.0015
riverside.courts.ca.gov/localforms/localforms.shtml

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| LAW OFFICES OF CLARK GAREN<br>CLARK GAREN, CALIFORNIA STATE BAR #50564<br>P. O. BOX 1790<br>PALM SPRINGS, CALIFORNIA 92263<br>TELEPHONE NO: (760) 323-4901    FAX NO: (760) 288-4080<br>ATTORNEY FOR (Name): PLAINTIFF | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 3255 EAST TAHQUITZ CANYON WAY
MAILING ADDRESS:
CITY AND ZIP CODE: PALM SPRINGS, CALIFORNIA 92262
BRANCH NAME: DESERT DISTRICT

CASE NAME: TARA BROADCASTING, L.L.C. vs. CHARTER COMMUNICATIONS, INC., etc., et. al.,

| CIVIL CASE COVER SHEET | Complex Case Designation | | PSC 1800823 |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37) | **(Cal. Rules of Court, rules 3.400-3.403)**<br>☑ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26) | |
| **Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☑ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02)<br>☐ Other judicial review (39) | **Enforcement of Judgment**<br>☐ Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint (not specified above) (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition (not specified above) (43) |
| **Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | | |

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify)*: 4
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 01/25/2018

CLARK GAREN
_____          _____
(TYPE OR PRINT NAME)                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CEB.com   **Essential**
          ☑ **Forms**

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
    Claim
  Other Civil Petition

CEB | Essential
    ceb.com | Forms     **CIVIL CASE COVER SHEET**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(NAME AND ADDRESS)*   TELEPHONE NO.:
LAW OFFICES OF CLARK GAREN   (760) 323-4901
CLARK GAREN, CALIFORNIA BAR #50564
P. O. Box 1790, PALM SPRINGS, CA. 92263
ATTORNEY FOR *(NAME)*: PLAINTIFF

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   RIVERSIDE
STREET ADDRESS: 3255 East Tahquitz Canyon Way
MAILING ADDRESS:
CITY AND ZIP CODE: Palm Springs, California  92262
BRANCH NAME: DESERT DISTRICT

PLAINTIFF: TAFA BROADCASTING, L.L.C.,

DEFENDANT: Charter Communications, Inc., etc., et. al.

**DECLARATION OF PREJUDICE CCP 170.6**
**(PEREMPTORY CHALLENGE)**

CASE NUMBER:
PSC 1800823

---

CLARK GAREN _____ declares
(NAME OF DECLARANT)

that he/ she is  ATTORNEY FOR PLAINTIFF _____ a party to the within action hereinafter
(INSERT "ATTORNEY FOR" OR LEAVE BLANK)

called "case" therein as follows:

TAFA BROADCASTING, L.L.C. _____
(NAME OR NAMES OF PARTIES)

that  DAVID CHAFMAN _____, the Judge, Court Commissioner or Referee to
(NAME OF JUDGE/COMMISSIONER/REFEREE BEING DISQUALIFIED)

whom the case has been assigned is prejudiced against the  PLAINTIFF _____ or the interest
(PLAINTIFF OR DEFENDANT)

of the  PLAINTIFF _____ so that Declarant cannot or believes that he/she cannot have a fair
(PLAINTIFF OR DEFENDANT)

and impartial trial or hearing before such Judge, Court Commissioner or Referee.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: February 13, 2018 _____

_____
(SIGNATURE OF DECLARANT)

**RECEIVED**

SC-1002 [Rev. July 1, 1999]

**DECLARATION OF PREJUDICE CCP 170.6**
**(PEREMPTORY CHALLENGE)**

CCP 170.6

FEB 13 2018

Name: _____

# RIVERSIDE SUPERIOR COURT
## PUBLIC ACCESS

### Minute Order

| Case Name: TARA BROADCASTING V CHARTER COMMUNICATIONS | |
|---|---|
| Palm Springs Civil | Civil Rights-Over $25,000 (Palm Springs) |
| Case Number: PSC1800823 | File Date: 2/13/2018 |
| Action Date: 2/13/2018 | Action Time: 9:10 AM | Department: N/A |
| Action Description: Case reassigned to Department PS1 for all future proceedings. (Palm Springs) | |

Notice printed for LAW OFFICES OF CLARK GAREN on 2/14/18

Case assigned to Judge James T Latting Dept. PS1 for all purposes.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
3255 E. Tahquitz Cyn Way
Palm Springs, CA 92262
www.riverside.courts.ca.gov

NOTICE OF DEPARTMENT ASSIGNMENT FOR ALL PURPOSES

TARA BROADCASTING V CHARTER COMMUNICATIONS

CASE NO. PSC1800823

This case is assigned to the Honorable Judge David M. Chapman in Department ~~Dep~~ *P5-1*
for all purposes.
The   Case Management Conference is scheduled for 08/13/18 at   8:30 in Department *P5-1*

The   plaintiff/cross-complainant   shall   serve   a   copy   of   this   notice   on   all
defendants/cross-defendants who are named or added to the complaint and file proof of
service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that
section. The court follows California Rules of Court, Rule 3.1308(a) (1) for tentative
rulings (see Riverside Superior Court Local Rule 3316). Tentative Rulings for each law
and motion matter are posted on the Internet by 3:00 pm on the court day immediately
before the hearing at <http://www.riverside.courts.ca.gov/tentativerulings.shtml>. If you
do not have internet access, you may obtain the tentative ruling by telephone at
(760)904-5722.

To request oral argument, not later than 4:30 pm on the court day before the hearing you
must (1) notify the judicial secretary at (760)904-5722 and (2) inform all other parties. If
no request for oral argument is made by 4:30 pm, the tentative ruling will become the
final ruling on the matter effective the date of the hearing.

Requests for accommodations can be made by submitting Judicial Council form MC-410
no fewer than five court days before the hearing. See California Rules of Court, rule

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of
Riverside, and that I am not a party to this action or proceeding. In my capacity, I am
familiar with the practices and procedures used in connection with the mailing of
correspondence. Such correspondence is deposited in the outgoing mail of the Superior
Court. Outgoing mail is delivered to and mailed by the United States Postal Service,
postage prepaid, the same day in the ordinary course of business. I certify that I served
a copy of the foregoing NOTICE on this date, by depositing said copy as stated above.

Court Executive Officer/Clerk

Date: 02/13/18

by: _____

LUCERO B ZUNIGA, Deputy Clerk

```
 1  LAW OFFICES OF CLARK GAREN
    CLARK GAREN, CALIF. BAR #50564
 2  ATTORNEYS AT LAW,
    P. O. BOX 1790,
 3  PALM SPRINGS, CALIFORNIA 92263
    TELEPHONE: (760) 323-4901
 4  FAX: (760) 288-4080
    E:Mail: clarkgaren@msn.com
 5
    LAW OFFICE OF DAVID W. WIECHERT,
 6  CALIFORNIA STATE BAR #94607
    ATTORNEYS AT LAW,
 7  115 AVENIDA MIRAMAR,
    SAN CLEMENTE, CALIFORNIA 92672
 8  TELEPHONE: (949) 361-2822
    FAX: (949) 496-6753
 9  E:MAIL: dwiechert@aol.com

10  ATTORNEYS FOR PLAINTIFF
```

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

FEB 13 2018

Lucero Zuniga

```
11      SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

12                    DESERT DISTRICT  PSC 1800823
```

| | |
|---|---|
| 13 TARA BROADCASTING, L.L.C., a California Limited Liability Company, | ) Case No. |
| 14 | ) |
| | ) COMPLAINT FOR: |
| 15                              Plaintiff, | ) |
| | ) 1. Violation of the |
| 16 -vs- | ) Unruh Civil Rights |
| | ) Act (Ca. Civil Code |
| 17 Charter Communications, Inc., | ) Sections 51 et. Seq. |
| individually and doing business | ) 2. Violation of the |
| 18 as SPECTRUM and formerly doing | ) Clayton Act (Ca. |
| business as TIME WARNER CABLE; | ) B&P Code 16721 |
| 19 Alexis Johnson, an individual; | ) et. seq. |
| Keely Bostock, an individual; | ) 3. False |
| 20 Deborah Picciolo, an individual; | ) Advertising in |
| DOES 1 through 1,000, inclusive, | ) violation of Ca. |
| 21 | ) B&P Code 17500 |
| | ) 4. Unfair Business |
| 22                              Defendants. | ) Practices in |
| | ) violation of Ca. |
| 23 | ) B&P Code 17200 |
| _____ | ) **UNLIMITED CIVIL** |

```
24               CAST OF CHARACTERS

25      1.  Plaintiff is unaware of the true names and

26  capacities, whether individual, associate, corporate,

27  limited liability company, partnership, or otherwise, of

28  Defendants Doe 1 through 1,000, inclusive, and Plaintiff
```

therefore sues said defendants by these fictitious names.
Plaintiff will ask leave of the Court to amend this
pleading to insert their true names and capacities when
the same can be ascertained.

2. At all times mentioned herein, each defendant was
the agent, servant, employee, joint venturer, or partner
of each of the remaining defendants, and, at all times
mentioned herein, each such defendant was acting within
the course and scope of said agency, servancy,
employment, joint venture, or partnership.

3. At all times mentioned herein, Plaintiff TARA
BROADCASTING, L.L.C. was a valid and subsisting
California Limited Liability Company duly authorized to
transact business in California as a Limited Liability
Company. At all times mentioned herein, Plaintiff TARA
BROADCASTING, L.L.C. was authorized to transact business
under the fictitious name style of KAKZ TELEVISION,
CHANNEL 4, PALM SPRINGS. At all times mentioned herein,
Plaintiff TARA BROADCASTING, L.L.C., doing business as
KAKZ TELEVISION, CHANNEL 4, PALM SPRINGS was duly
licensed by the Federal Communications Commission, an
agency of the United States of America, and granted
Plaintiff the exclusive right to broadcast a Live Local
Television Channel as a low power television signal of
3,000 watts on digital channel 4.1, 4.2, 4.3, and 4.4 to
the Palm Springs coverage map specified in said FCC
license, a copy of which is attached to this Complaint as
Exhibit 1 and incorporated herein by reference. Plaintiff

-2-

1  broadcasts all four channels 24 hours a day, seven days
2  a week; has a state-of-the-art television studio to
3  telecast a live broadcast signal; and performs all of the
4  functions of a full power television station except that
5  its broadcast signal is weaker than the broadcast signal
6  of a full power station. However, because Plaintiff
7  broadcasts on Channel 4 which is a very high frequency,
8  the 3,000 watt signal of Plaintiff is able to be received
9  throughout its Palm Springs Coverage Map attached hereto
10  as Exhibit 1.

11      4. At all times mentioned herein, Defendant Charter
12  Communications, Inc. was a valid and subsisting Delaware
13  corporation duly authorized to transact business in
14  California. At all times mentioned herein, Defendant
15  Charter Communications, Inc. was duly authorized to
16  transact business in California under the fictitious name
17  style of SPECTRUM and, at all times mentioned herein,
18  Defendant CHARTER COMMUNICATIONS, INC. was formerly
19  authorized to transact business under the fictitious name
20  style of TIME WARNER CABLE by virtue of its purchase of
21  the free standing entity formerly known as TIME WARNER
22  CABLE. At all times mentioned herein, Defendant CHARTER
23  COMMUNICATIONS, INC., doing business as SPECTRUM and
24  formerly doing business as TIME WARNER CABLE, was the
25  sole distributor of cable television to the Palm Springs
26  Coverage Map of Plaintiff which is attached hereto as
27  Exhibit 1 and incorporated herein by reference

28      5. At all times mentioned herein, Defendant Alexis

1  Johnson, an individual, was a resident of the State of
2  Connecticut, and, at all times mentioned herein,
3  Defendant Alexis Johnson held the position of Vice-
4  President of Content Acquisition of Defendant Charter
5  Communications, Inc. As the executive assigned by
6  Defendants, and each of them, to interface with the
7  Azteca America network, Defendant Alexis Johnson was
8  vested with and assumed the ultimate responsibility from
9  Defendant Deborah Picciolo, an individual, for the
10 selection of the live local broadcast channels that would
11 be distributed by the Defendant's cable delivery system
12 to the subscribers and customers of the Defendants, and
13 each of them, distributed to the Palm Springs Coverage
14 Map attached hereto as Exhibit 1.

15     6. At all times mentioned herein, Defendant Keely
16 Bostock, an individual, was a resident of the State of
17 Colorado, and, at all times mentioned herein, Defendant
18 Keely Bostock held the position of Vice-President of
19 Content Acquisition of Defendant Charter Communications,
20 Inc. By virtue of the actions of Defendant Deborah
21 Picciolo, an individual, described hereinafter in
22 Paragraph 7, Defendant Keely Bostock assumed the ultimate
23 responsibility from Defendant Deborah Picciolo, an
24 individual, for the selection of the live local broadcast
25 channels that would be distributed by the Defendant's
26 cable delivery system to the subscribers and customers of
27 the Defendants, and each of them, distributed to the Palm
28 Springs Coverage Map attached hereto as Exhibit 1.

-4-

7. At all times mentioned herein, Defendant Deborah Picciolo, an individual, was a resident of the State of California, and, at all times mentioned herein, Defendant Deborah Picciolo held the position of Vice-President and General Manager of the Southern California region of Defendant Charter Communications, Inc., and was the company executive charged with ultimate responsibility for the administration of the cable delivery system to the subscribers and customers of the Defendants, and each of them, distributed to the Palm Springs Coverage Map attached hereto as Exhibit 1.

## JURISDICTION AND VENUE

8. All of the actions and wrongdoing which forms the basis of this Complaint, including, but not limited to, the discrimination against Plaintiff and the False Advertising, all occurred within the State of California, County of Riverside, Desert Judicial District.

9. Charter Communications, Inc. is a Delaware Corporation duly authorized to transact business in California. Therefore, jurisdiction and venue for the corporate entity are proper in the Superior Court of any County in California.

10. Plaintiff hereby waives and renounces any claim to injunctive relief to order Defendants, or any of them, to distribute any of Plaintiff's television channels to its subscribers and customers within the Palm Springs Coverage Map attached hereto as Exhibit 1 or anywhere else. In this Complaint, Plaintiff limits is claims under

the California Unruh Civil Rights Act and California Cartwright Anti-Trust Act to the recovery of money damages **only** for the violations alleged herein.

**THERE IS NO FEDERAL OR F.C.C. JURISDICTION**
**OVER PLAINTIFF'S STATE LAW CLAIMS FORMING**
**THE BASIS OF THIS COMPLAINT**

11. Plaintiff is classified as a Low Power Television Station because its market is located within the 160 largest markets. Therefore, Congress did not grant the Federal Communications Commission jurisdiction to regulate the carriage of low power television stations like that owned by Plaintiff. This is confirmed by the F.C.C. rules, which read, in pertinent part, as follows:

> "(e) Carriage of additional broadcast television signals on such system shall be at the discretion of the cable operator, subject to the retransmission consent rules, § 76.64. A cable system may also carry any ancillary or other transmission contained in the broadcast television signal."

47 *Code of Federal Regulations* 76.56

Since the F.C.C. does not regulate the carriage of Plaintiff and leaves carriage to the discretion of the cable television operator, the cable television operator must comply with all state and local laws in exercising its grant of discretion. This includes, but is not limited to, the California Unruh Civil Rights Act; the California Anti-Trust Act; the California False Advertising Act, and the California Unfair Business Practices Act. While the FCC is charged with regulating the airways, the California state courts have jurisdiction to award damages to victims for violations

1  of state or local laws by the Defendants, and each of

2  them.

3      12. Established California law holds that the neither

4  the Cable Television Consumer Protection and Competition

5  Act of 1992 or the Cable Communications Policy Act

6  preempt California jurisdiction of Anti-Trust claims

7  under the Unruh Civil Rights Act; the Cartwright Act; the

8  False Advertising Act, or the Unfair Business Practice

9  Act (see *Morrison vs. Viacom*, 52 Cal. App. 4th 1514;

10  *Total TV vs. Palmer Communications, Inc.*, 69 F. 3d 298).

11  Furthermore, the FCC has no jurisdiction to award damages

12  to anyone who is damaged by a licensee's violation of

13  state laws and regulations.

14      "Primary jurisdiction is a doctrine which requires
       that issues within an agency's special expertise be
15     decided by the appropriate agency. Under this
       doctrine, claims must be referred to an agency if (1)
16     the administrative agency has the authority to
       resolve the issues that would be referred to it by
17     the Court; (2) the agency has special competence over
       all or some part of the controversy which renders the
18     agency better able than the court to resolve the
       issues; and (3) the claim before the court involves
19     issues that fall within the scope of a pervasive
       regulatory scheme creating a danger that judicial
20     action would conflict with the regulatory scheme."

21  *Tenore vs. AT&T Wireless Services* (1998),
    136 Washington 2d 322, 345

22

23      "The Companies are correct that the Commission lacked
       the legal authority to discuss the merits of their
24     state-law *quantum meruit* claims. Congress has vested
       the Commission only with the authority to address
       allegations of actions taken "in contravention of"
25     the Communications Act. 47 *U.S.C.* Section 208(a). A
       state common law claim, by definition, does not arise
26     under or state a violation of the Communications Act,
       and thus falls outside the scope of the Commission's
27     jurisdiction."

28  *All Am. Tel. Co. vs. FCC*, (2017), 867 F. 3d 81, 94

Therefore, the FCC does **not** have jurisdiction to adjudicate damage claims based exclusively on state law. Only state courts, or Federal Courts based on diversity jurisdiction, have jurisdiction over claims for damages for violations of state law.

13. On November 5, 2017, Plaintiff served Defendants, and each of them, with a notice of its claim for damages for violation of the California Unruh Civil Rights Act and California Clayton Anti-Trust Act. A copy of said notice is attached hereto, marked Exhibit 2.

14. On November 25, 2017, Plaintiff served Defendants, and each of them, with a notice of its claim for damages for violation of the California False Advertising Act and the California Unfair Business Practices Act. A copy of said notice is attached hereto, marked Exhibit 3.

15. If Defendants, and each of them, believed that the communications attached as Exhibit 2 or Exhibit 3 were subject to the jurisdiction of the Federal Communications Commissions, then Defendants, and each of them, would have been obligated by 47 *Code of Federal Regulations* 76.61(a)(2) to have responded to Exhibit 2 or Exhibit 3 within thirty (30) days after receipt thereof. Defendants, and each of them, have failed and refused to respond to either Exhibit 2 or Exhibit 3, either within 30 days after service or at all. By failing and refusing to respond as required by 47 *Code of Federal Regulations* 76.61(a)(2), Defendants, and each of them, concede that

-8-

1  the subject matter of this Complaint is not subject to
2  the jurisdiction of the Federal Communications
3  Commission.
4                              **THE STORY**
5        16.  Plaintiff has been seeking carriage from
6  Defendants, and each of them, on Spectrum and its
7  predecessor, Time Warner Cable, since July 1, 2015.
8  Basically, Plaintiff has been given the run-a-round by
9  Defendants, and each of them. The Defendants, and each of
10  them, have promised that they are planning to distribute
11  Plaintiff's local television channels to its subscribers
12  and customers within the Palm Springs Coverage Maps
13  attached hereto as Exhibit 1, but Defendants, and each of
14  them, have failed and refused, and continue to fail and
15  refuse, to either distribute Plaintiff's local television
16  channels to its subscribers and customers within the Palm
17  Springs Coverage Maps attached hereto as Exhibit 1 or
18  provide a legitimate, non-discriminatory reason for their
19  refusal to do so.
20        17.  This process started with the submission to a
21  written request for carriage to GINA WULFESTIEG, the
22  content acquisition executive for Defendants, and each of
23  the, who was located in the Culver City office of the
24  Defendants, and each of them. Plaintiff is informed and
25  believes, and thereon alleges that GINA WULFESTIEG was
26  instructed by Defendant Deborah Picciolo, the Vice-
27  President and General Manager of the Southern California
28  region of Defendant Charter Communications, Inc., to deny

                              - 9 -

1  Plaintiff['s request and refer Plaintiff to Defendant
2  KEELY BOSTOCK as part of a scheme to give Plaintiff the
3  run-a-round and never really grant or deny Plaintiff's
4  request for carriage. Thereafter, and on or about August
5  31, 2015, Plaintiff had a long telephone conversation
6  with Defendant Keely Bostock. Defendant Bostock verbally
7  promised distribution of Plaintiffs television channels
8  to its subscribers and customers within the Palm Springs
9  Coverage Map attached hereto as Exhibit 1 once the Time
10 Warner digital conversion was completed. Defendants, and
11 each of them, completed the digital conversion in April,
12 2016, but Plaintiff's continual requests for carriage
13 went unanswered.

14      18. Finally, in April, 2017, Defendant Bostock told
15 Plaintiff's sales manager, Martin Serna, that Defendants,
16 and each of them, would only consider distributing KAKZ's
17 Azteca America channel, and that Defendants, and each of
18 them, refused to carry any of its other channels, but
19 Defendants, and each of them, provided no reason
20 therefor. However, when Plaintiff sought carriage for
21 Azteca America alone, Plaintiff was told Plaintiff needed
22 to have a local feel to it, even though Azteca America is
23 a network providing programming for 23.5 hours each day;
24 is the second largest Latino broadcaster; and is not
25 distributed to the subscribers and customers of the
26 Defendants, and each of them, in the Palm Springs
27 Coverage Map attached hereto as Exhibit 1. Plaintiff
28 believed this was unreasonable and a further runaround,

1    but Plaintiff still invested an additional $20,000.00 to
2    create a daily  locally produced Latino newscast airing
3    5 days a week during its 30 minute programming slot for
4    local news allocated by the Azteca America network.

5        19. In response thereto, Defendant BOSTOCK still
6    refused to distribute any of Plaintiff's channels to the
7    Defendants subscribers and customers within the Palm
8    Springs Coverage Map attached hereto as Exhibit 1, and
9    refused to provide a legitimate, non-discriminatory
10   reason for not doing so except for the vague statement
11   that Defendants, and each of them, are not required by
12   the FCC to carry low power stations.

13       20. At the suggestion of the Azteca America network,
14   Plaintiff then contracted Defendant Alexis Johnson, Vice-
15   President of Content Acquisition and the Defendants
16   representative for the Azteca America network. After
17   investigating for two weeks, Defendant Johnson, told
18   Plaintiff that Defendants, and each of them, will not
19   carry any of its signals, including the Azteca America
20   signal, "at this time". Defendant Johnson also refused to
21   provide a legitimate, non-discriminatory reason for not
22   doing so except for the vague statement that Defendants,
23   and each of them, are not required by the FCC to carry
24   low power stations.

25

26

27

28

## DEFENDANTS, AND EACH OF THEM, ARE INTENTIONALLY, WILLFULLY, AND WANTONLY DISCRIMINATING AGAINST PLAINTIFF AND PLAINTIFF'S UNIQUE VIEWERSHIP

21. The Defendants, and each of them, provide all of its subscribers and customers with the Palm Springs Coverage Map attached hereto as Exhibit 1 with the signals of nine local television stations, of which three are full power and six are low power. The Defendants, and each of them, provide the 49.6% non-Latino subscribers and customers of Defendants, and each of them, within the Palm Springs Coverage Map attached hereto as Exhibit 1 with the television channels of seven local television stations, three of which are full power and four of which are low power. The Defendants, and each of them, provide the 51.4% Latino subscribers and customers of Defendants, and each of them, within the Palm Springs Coverage Map attached hereto as Exhibit 1 with the television channels of only two local television stations, both of which are low power. These statistics establish a prima facia case of discrimination against the 51.4% majority Latino subscribers and customers of the Defendants, and each of them because Defendants, and each of them, are under serving the Latino majority of its subscribers and customers within the Palm Springs Coverage Map attached hereto as Exhibit 1.

22. 60% of the homes in the Palm Springs Coverage Map attached hereto as Exhibit 1 receive their television channels from the Defendants, and each of them. A

1  television station cannot be an economically viable
2  business when it is denied access to 60% of the homes
3  within the its coverage map.

4      23. Plaintiff is a member of a protected class
5  because its Azteca America channel serves the Latino
6  community, and, in addition thereto, it is suffering a
7  disparate act because Defendants, and each of them, are
8  denying Plaintiff's Azteca America channel access to 60%
9  of the subscribers and customers of the Defendants, and
10 each of the, within the Palm Springs Coverage Map
11 attached hereto as Exhibit 1. This establishes a prima
12 facia case of discrimination against Plaintiff, and
13 shifts the burden to Defendants, and each of them, to
14 articulate a legitimate, non-discriminatory reason to
15 explain their discriminatory conduct towards the
16 Plaintiff.

17     24. A similar analysis applies to the Plaintiff's
18 Coachella Valley Classic TV channel and the Plaintiff's
19 Westerns 4 U channel. Coachella Valley Classic TV and
20 Westerns 4 U features program that have not been seen for
21 50 years, but are fondly remembered and desired to be
22 seen by the population over age 65, who remember seeing
23 these programs as children. The over 65 population is
24 32.5% of the Palm Springs Coverage Map attached hereto as
25 Exhibit 1, and it, too, is under served by the seven
26 existing channels which broadcast shows that are
27 primarily of interest to those under age 45.

28

25.  Plaintiff is a member of a protected class because its Coachella Valley Classic TV channel and its Westerns 4 U primarily serve the 32.5% of the Palm Springs Coverage Map attached hereto as Exhibit 1 that is over 65 years of age, and, in addition thereto, it is suffering a disparate act because Defendants, and each of them, are denying Plaintiff's Coachella Valley Classic Television and Westerns 4 U channels access to the 60% of the subscribers and customers of the Defendants, and each of them, residing within the Palm Springs Coverage Map attached hereto as Exhibit 1. This establishes a prima facia case of discrimination in favor of Plaintiff, and shifts the burden to Defendants, and each of them, to articulate a legitimate, non-discriminatory reason to explain their discriminatory conduct towards the Plaintiff.

26. Plaintiff has asked the Defendants, and each of them, to state a legitimate, non-discriminatory reason to justify their discrimination against Plaintiff by refusing to distribute Plaintiff's television channels to the customers and subscribers of Defendants, and each of them, within the Palm Springs Coverage Map attached hereto as Exhibit 1, but Defendants, and each of them, have failed and refused to articulate any legitimate, non-discriminatory reason for their actions. The only hint of a reason provided by the Defendants, and each of them, is that the FCC does not require Defendants, and each of them, to carry Plaintiff's channels because it is

1  a low power television station. Plaintiff is informed and
2  believes, and thereon alleges, that this articulated
3  reason is nothing more than pretext and this articulated
4  reason does not constitute a legitimate, non-
5  discriminatory reason for the discriminatory actions
6  taken by Defendants, and each of them against Plaintiff.
7  This is confirmed by the distribution by Defendants, and
8  eaach of them, of six (6) other Low Power Television
9  Stations to its subscribers and customers within the Palm
10 Springs Coverage Map attached hereto as Exhibit 1.

**FIRST CAUSE OF ACTION AGAINST**
**ALL DEFENDANTS FOR VIOLATION OF THE**
**UNRUH CIVIL RIGHTS ACT**
***(California Civil Code Section 51 et. seq.)***

14     27. Plaintiff realleges and incorporates herein by
15 reference each and every allegation contained in
16 Paragraphs 1 through 26, inclusive, hereinabove.

17     28. The California Unruh Civil Rights Act
18 *(California Civil Code Section 51 et. seq.)* requires
19 every single business located in California to offer its
20 services on the same terms and conditions to ***everyone***
21 doing business in California. This statute has no
22 exclusion for Low Power Television Stations like
23 Plaintiff's. The statute reads as follows:

24     "Citation of section; Civil rights of persons in
        business establishments; Definitions

25     (a)  This section shall be known, and may be cited,
26     as the Unruh Civil Rights Act.

27
28

(b)   All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

*California Civil Code Section 51*

29. *California Civil Code Section 51.5* (b) defines a "person" as "any person, firm, association, organization, partnership, business trust, corporation, limited liability company, or company".

30. By refusing to distribute Plaintiff's television channels to the customers and subscribers of Defendants, and each of them, located within the Palm Springs Coverage Map attached hereto as Exhibit 1 on the same terms and conditions as Defendants, and each of them, distribute the television channels of the six other Low Power Television stations to the customers and subscribers of Defendants, and each of them, located within the Palm Springs Coverage Map attached hereto as Exhibit 1, the Defendants, and each of them, are violating *California Civil Code Section* 51 by failing and refusing to provide full and equal accommodations, advantages, facilities, privileges, or services to Plaintiff. Specifically, Defendants, and each of them, refuse to provide service to Plaintiff on the same terms and conditions as the Defendants, and each of them, provide service to the six other low power television stations broadcasting to the subscribers and customers in

- 16 -

1 the Palm Springs Coverage Map attached hereto as Exhibit
2 1.

3     31. *California Civil Code Section* 51.5. prohibits
4 discrimination by any business establishment and reads as
5 follows:

6     (a)    No business establishment of any kind
whatsoever shall discriminate against, boycott
7 or blacklist, or refuse to buy from, contract
with, sell to, or trade with any person in this
8 state on account of any characteristic listed or
defined in subdivision (b) or (e) of Section 51,
9 or of the person's partners, members,
stockholders, directors, officers, managers,
10 superintendents, agents, employees, business
associates, suppliers, or customers, because the
11 person is perceived to have one or more of those
characteristics, or because the person is
12 associated with a person who has, or is
perceived to have, any of those characteristics.
13
    (b) As used in this section, "person" includes
14 any person, firm, association, organization,
partnership, business trust, corporation,
15 limited liability company, or company

16     32. Defendants, and each of them, have further
17 violated California Civil Code Section 51.5(a) by
18 discriminating against, boycotting or blacklisting, or
19 refusing to buy from, contract with, sell to, or trade
20 with Plaintiff because of a characteristic listed or
21 defined in *California Civil Code Section* 51.5(b).
22 Defendants, and each of them, are discriminating against
23 Plaintiff because Plaintiff primarily provides service to
24 the Latino and senior populations of the Palm Springs
25 Coverage Map attached hereto as Exhibit 1, and Latino and
26 senior populations are characteristics listed or defined
27 in *California Civil Code Section* 51.5(b).

28     33. As a direct and proximate result of said acts of

violation of the California Unruh Act by Defendants, and each of them, Plaintiff has been damaged in the sum of FIFTY THOUSAND DOLLARS ($50,000.00) per **month** because local advertisers have committed to purchase advertising from Plaintiff in the sum of $50,000.00 per month as soon as its channels are distributed by Defendants, and each of them. Since Defendant Bostock made the initial commitment to carry the Plaintiff's stations after conversion to digital in April, 2016, Plaintiff has been damaged in the sum of $50,000.00 per month from April, 2016 through and including January, 2018, a period of 22 months for a total damage claim of $1,100.000.00.

34.  As a further direct and proximate result, *California Civil Code Section 52* requires that the damages specified hereinabove in Paragraph 33 be trebled to the sum of $3,300,000.00.

35.  Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, will continue to violate the Unruh Civil Rights Act by refusing to distribute Plaintiff's television channels to their subscribers and customers within the Palm Springs Coverage Map attached hereto as Exhibit 1, and that Plaintiff will therefore continue to sustain actual damages at the rate of $50,000.00 per month for each month after January, 2018, and that said damages must be trebled to $150,000.00 per month. Plaintiff therefore requests that the Court order Defendants, and each of them, to continue to pay Plaintiff the sum of $150,000.00

1  per month as damages for violation of the Unruh Civil
2  Rights Act until such time as Defendants, and each of
3  them, elect to distribute all of Plaintiff's television
4  stations to all its subscribers and customers within the
5  Palm Springs Coverage Map attached hereto as Exhibit 1.
6       36. *California Civil Code Section* 52 further provides
7  that Plaintiff is entitled to an award of its reasonable
8  attorney fees for bringing this action, together with all
9  costs of suit incurred herein.

10              **SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**
                  **FOR VIOLATION OF CALIFORNIA CONSPIRACY**
11                        **AGAINST TRADE ACT**
                  **(Cartwright Act, *California B & P Code* 16721**
12
13      37. Plaintiff realleges and incorporates herein by
14  reference each and every allegation contained in
    Paragraphs 1 through 26, inclusive, hereinabove.
15
16      38. Plaintiff realleges and incorporates herein by
17  reference each and every allegation contained in
    Paragraphs 27 through 36, inclusive, hereinabove.
18
19      39. *California Business and Professions Code Section*
20  16721, commonly known as The Cartwright Anti-Trust Act,
21  classifies the foregoing violations of the Unruh Civil
22  Rights Act set forth hereinabove in the First Cause of
23  Action as a violation of The Cartwright Anti-Trust Act
24  because Defendants, and each of them, have excluded
25  Plaintiff from a business transaction because of a
26  characteristic listed or defined in subdivision (b) or
27  (e) of Section 51 of the Civil Code, which is that
28  Plaintiff primarily provides service to Latinos and

Senior Citizens.

40. As a direct and proximate result thereof, Plaintiff is entitled to recover three times the damages it has sustained totaling $150,000.00 per month, beginning in April, 2016, together with interest thereon at the rate of 10% per annum, together with reasonable attorneys' fees and the costs of the suit and continuing for each succeeding month until Defendants, and each of them, distribute to all of their subscribers and customers within the Palm Springs Coverage Map attached hereto as Exhibit 1 all of Plaintiff's local broadcast channels.

**THIRD CAUSE OF ACTION AGAINST
CHARTER COMMUNICATIONS, INC.,
INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM
AND FORMERLY DOING BUSINESS AS TIME WARNER CABLE
FOR VIOLATION OF *CALIFORNIA B&P CODE SECTION* 17200
(UNTRUE OR MISLEADING ADVERTISING)**

41. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 26, inclusive, hereinabove.

42. On or about November 12, 2017, Defendant CHARTER COMMUNICATIONS, INC., INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM AND FORMERLY DOING BUSINESS AS TIME WARNER CABLE mailed the advertising circular attached hereto as Exhibit 4 to all residents of the Palm Springs Coverage Map attached hereto as Exhibit 1. Said advertising prominently stated that Spectrum carried "LIVE LOCAL BROADCAST CHANNELS".

43. Said advertising circular attached hereto as

1  Exhibit 4 violated *California Business and Professions*
2  *Code Section* 17200 because it is untrue and misleading.
3  Said advertising circular represents to residents within
4  the Plaintiff's Palm Springs Coverage Map attached hereto
5  as Exhibit 1 that Plaintiff is **not** a live local broadcast
6  channel because Defendant CHARTER COMMUNICATIONS, INC.,
7  INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM AND FORMERLY
8  DOING BUSINESS AS TIME WARNER CABLE represents that it
9  carries "Live Local Broadcast Channels" but it does not
10 carry any of the live local broadcast channels of the
11 Plaintiff. Defendant CHARTER COMMUNICATIONS, INC.,
12 INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM AND FORMERLY
13 DOING BUSINESS AS TIME WARNER CABLE thereby violates
14 *California Business and Professions Code Section* 17200 by
15 presenting untrue and misleading statements about the
16 Plaintiff to the residents within Plaintiff's broadcast
17 coverage map that Plaintiff is not a live local broadcast
18 channel.
19     44. As a proximate result of the untrue and
20 misleading advertising in violation of *California*
21 *Business and Professions Code Section* 17200 attached
22 hereto as Exhibit 4, Plaintiff has sustained damages.
23 Plaintiff cannot ascertain at this time the exact amount
24 of damages it has sustained thereby, and Plaintiff will
25 ask leave of the Court to amend this pleading to insert
26 the correct amount when the same can be ascertained.
27
28

45. Plaintiff further prays for an injunction preventing Defendant CHARTER COMMUNICATIONS, INC., INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM AND FORMERLY DOING BUSINESS AS TIME WARNER CABLE from using advertising circulars in the future that state Defendant carries "live local broadcast channels" without either identifying each specific live local broadcast channel it carries and identifying each specific live local broadcast channel that it does not carry or, in the alternative, that contains no statement that it carries "live local broadcast channels".

46. Plaintiff has incurred attorney fees in prosecuting this action, and Plaintiff requests that it be award its reasonable attorney fees incurred in prosecuting this action.

**FOURTH CAUSE OF ACTION AGAINST
CHARTER COMMUNICATIONS, INC.,
INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM
AND FORMERLY DOING BUSINESS AS TIME WARNER CABLE
FOR UNFAIR BUSINESS PRACTICES
(*California B & P Code Section* 17500)**

47. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 26, inclusive, hereinabove.

48. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 27 through 46, hereinabove, inclusive.

49. The actions of Defendant CHARTER COMMUNICATIONS, INC., INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM AND FORMERLY DOING BUSINESS AS TIME WARNER CABLE, described

-22-

hereinabove in Paragraphs 1 through 46, inclusive, are unlawful, unfair, or fraudulent business acts or practices and the actions described hereinabove in Paragraphs 41 through 46, inclusive, are deceptive, untrue, or misleading advertising that is prohibited by *California Business and Professions Code Section* 17500.

50. As a proximate result of the unfair business practices described in the First and Second Causes of Action, Plaintiff has sustained damages at the rate of $50,000.00 per month from April, 2016 through and including the present time, and will continue to sustain damages at the rate of $50,000.00 per month until Defendant CHARTER COMMUNICATIONS, INC., INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM AND FORMERLY DOING BUSINESS AS TIME WARNER CABLE, distributes all of Plaintiff's television channels to all of the subscribers and customers of Defendants, and each of them, within the Palm Springs Coverage Map attached hereto as Exhibit 1.

51. As a further proximate cause of the untrue and misleading advertising in violation of *California Business and Professions Code Section* 17200 attached hereto as Exhibit 4, Plaintiff has sustained damages. Plaintiff cannot ascertain at this time the exact amount of damages it has sustained thereby, and Plaintiff will ask leave of the Court to amend this pleading to insert the correct amount when the same can be ascertained.

52. Plaintiff further prays for an injunction preventing Defendant CHARTER COMMUNICATIONS, INC.,

1  INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM AND FORMERLY
2  DOING   BUSINESS   AS   TIME   WARNER   CABLE   from   using
3  advertising circulars in the future that state Defendant
4  carries "live local broadcast channels" without either
5  identifying each specific live local broadcast channel it
6  carries   and   identifying   each   specific   live   local
7  broadcast channel that it does not carry or, in the
8  alternative, that contains no statement that it carries
9  "live local broadcast channels".

10      53.   Plaintiff   has   incurred   attorney   fees   in
11 prosecuting this action, and Plaintiff requests that it
12 be   award   its   reasonable   attorney   fees   incurred   in
13 prosecuting this action.

14      W H E R E F O R E, Plaintiff prays for judgment,
15 according to proof, as follows:

16      **FIRST CAUSE OF ACTION:**

17      1. Actual damages at the rate of $50,000.00 per month
18 from April, 2016 through and including January, 2018, a
19 period  of  22  months  totaling  $1,100.000.00.  January,
20 2018, and that said damages be trebled to $150,000.00 per
21 month;

22      2. Continued payment of actual damages Plaintiff of
23 $50,000.00 per month until such time as Defendants, and
24 each  of  them,  elect  to  distribute  to  all  of  its
25 subscribers  and  customers  within  the  Palm  Springs
26 Coverage  Map  attached  hereto  as  Exhibit  1  all  of
27 Plaintiff's television channels, and that said damages be
28 trebled to $150,000.00 per month;

-24-

3. Reasonable attorney fees;

4. Costs of suit incurred herein;

**SECOND CAUSE OF ACTION:**

5. Actual damages at the rate of $50,000.00 per month from April, 2016 through and including January, 2018, a period of 22 months totaling $1,100.000.00. January, 2018, and that said damages be trebled to $150,000.00 per month;

6. Continued payment of actual damages Plaintiff of $150,000.00 per month until such time as Defendants, and each of them, elect to distribute to all of its subscribers and customers within the Palm Springs Coverage Map attached hereto as Exhibit 1;

7. Interest at the rate of 10% per annum on each damage award from April, 2016;

8. Reasonable attorney fees;

9. Costs of suit incurred herein;

**THIRD CAUSE OF ACTION**

10. Damages according to proof;

11. An injunction preventing Defendant CHARTER COMMUNICATIONS, INC., INDIVIDUALLY AND DOING BUSINESS AS SPECTRUM AND FORMERLY DOING BUSINESS AS TIME WARNER CABLE from using advertising circulars in the future that state Defendant carries "live local broadcast channels" without either identifying each specific live local broadcast channel it carries and identifying each specific live local broadcast channel that it does not carry or, in the alternative, that contains no statement that it carries

1  "live local broadcast channels";

2      12. Reasonable attorney fees;

3      13. Costs of suit incurred herein;

4      **FOURTH CAUSE OF ACTION**

5      14. Actual damages at the rate of $50,000.00 per

6  month from April, 2016 through and including January,

7  2018, a period of 22 months totaling $1,100.000.00.

8  January, 2018;

9      15. Actual damages at the rate of $50,000.00 per

10  month for each month after January, 2018 until such time

11  that Defendants, and each of them, elect to distribute to

12  all of its subscribers and customers within the Palm

13  Springs Coverage Map attached hereto as Exhibit 1;

14      16. Damages according to proof;

15      17. An injunction preventing Defendant CHARTER

16  COMMUNICATIONS, INC., INDIVIDUALLY AND DOING BUSINESS AS

17  SPECTRUM AND FORMERLY DOING BUSINESS AS TIME WARNER CABLE

18  from using advertising circulars in the future that state

19  Defendant carries "live local broadcast channels" without

20  either identifying each specific live local broadcast

21  channel it carries and identifies each specific live

22  local broadcast channel that it does not carry or, in the

23  alternative, that contains no statement that it carries

24  "live local broadcast channels";

25      18. Reasonable attorney fees;

26      19. Costs of suit incurred herein;

27

28

Dated: January 29, 2018

LAW OFFICES OF CLARK GAREN

By

CLARK GAREN
ATTORNEY FOR PLAINTIFF

**EXHIBIT 1**

# Federal Communications Commission

# LOW POWER TELEVISION BROADCAST STATION LICENSE

Licensee/Permittee
TARA BROADCASTING LLC
PO Box 1790
PALM SPRINGS, CA 92263

| Call Sign | File Number |
|---|---|
| KAKZ-LD | 0000010641 |

Facility ID: 184757
NTSC TSID:
Digital TSID:
This License Covers Permit    0000004443
No.:

| Grant Date | Expiration Date |
|---|---|
| 04/28/2016 | 12/01/2022 |

| Hours of Operation |
|---|
| Unlimited |

| Station Location | Frequency (MHz) | Station Channel |
|---|---|---|
| City CATHEDRAL CITY | 66.0 - 72.0 | 4 |
| State CA | | |

| Antenna Structure Registration Number: | |
|---|---|
| Transmitter<br>Type Accepted. See Sections 74.750 of the Commission's Rules. | Transmitter Output Power(kW)<br>As required to achieve authorized ERP. |
| Antenna Coordinates<br><br>Latitude 33-51-59.0 N<br>Longitude 116-26-5.0 W | Antenna Type<br>Directional |
| Description of Antenna<br><br>Make kathrein-scala<br>Model Four CL-46 HRM | Major Lobe Directions<br>140.0 |
| Antenna Beam Tilt (Degrees Electrical)<br>Not Applicable | Antenna Beam Tilt (Degrees Mechanical @ Degrees Azimuth)<br>Not Applicable |

| Maximum Effective Radiated Power (Average) 3.0 kW 4.77 DBK | |
|---|---|
| Height of Radiated Center Above Ground (Meters) 10.7 | Height of Radiated Center Above Mean Sea Level (Meters) 473.7 |
| Out-Of-Channel Emission Mask Full Service | Overall Height of Antenna Structure Above Ground (Meters) 19.8 |

## Waivers/Special Conditions

Subject to the provisions of the Communications Act of 1934, as amended, subsequent acts and treaties, and all regulations heretofore or hereafter made by this Commission, and further subject to the conditions set forth in this permit, the permittee is hereby authorized to construct the radio transmitting apparatus herein described. Installation and adjustment of equipment not specifically set forth herein shall be in accordance with representations contained in the permittee's application for construction permit except for such modifications as are presently permitted, without application, by the Commission's Rules.

Equipment and program tests shall be conducted only pursuant to Sections 73.1610 and 73.1620 of the Commission's Rules.

Mail - ClarkOaren@msn.com                                        https://outlook.live.com/owa/?path=/attachmentlightbox

Download    Full screen    Show email



**EXHIBIT 2**

## LAW OFFICES OF CLARK GAREN
### Post Office Box 1790
### Palm Springs, California 92263
### (760) 323-4901
### Fax: (760) 288-4080

November 5, 2017

Mr. Alexis Johnson,
Vice-President, Content Acquisition,
Charter Communications, Inc.,
400 Atlantic Street, 10th Floor,
Stamford, Connecticut 06901
Via Federal Express, Next Morning Delivery

Keely Bostock,
Vice-President, Content Acquisition
1460 South Emerson Street,
Denver, Colorado 80210
Via Federal Express, Next Morning Delivery

Ms. Deborah Picciolo,
Vice-President Field Operations,
Charter Communications, Inc.
550 Continental Blvd.,
El Segundo, California 90245
Via Federal Express, Next Morning Delivery

Re:    Tara Broadcasting, L.L.C. vs. Charter Communications, Inc., individually and doing
       business as SPECTRUM; Alexis Johnson, an individual; Keely Bostock, an individual;
       Deborah Picciolo, an individual;

Re:    Notice of Intent to File suit in Superior Court of California, County of Los Angeles for:
       1. Violation of the Unruh Civil Rights Act (California Civil Code Section 51 et. seq.)
       2. The Clayton Act (California Business and Professions Code Section 16721 et. seq.)

Dear Mr. Johnson, Ms. Bostock, and Ms. Picciolo:

1

I am writing this letter Spectrum an opportunity to resolve the issues raised herein without litigation.

## THE FCC DOES NOT ADJUDICATE DAMAGE CLAIMS BASED ON STATE LAW AND HAS ABSTAINED FROM REGULATING CARRIAGE OF LOW POWER TELEVISION STATIONS

47 *United States Code* 534 requires the carriage of Full Power and Qualified Low Power Television stations. Since KAKZ TELEVISION, CHANNEL 4, PALM SPRINGS, CALIFORNIA is within the top 160 markets, it is not eligible for classification as a Qualified Low Power Television Station. Therefore, the Federal Communications was not granted jurisdiction by Congress to regulate the carriage of low power television stations like KAKZ.

This is clarified by the F.C.C. rules, which read, in pertinent part, as follows:

> "(e) Carriage of additional broadcast television signals on such system shall be at the discretion of the cable operator, subject to the retransmission consent rules, § 76.64. A cable system may also carry any ancillary or other transmission contained in the broadcast television signal."

47 *Code of Federal Regulations* 76.56

This F.C.C. Rule clarifies that carriage of a low power television station like KAKZ is not regulated by the F.C.C. Since the F.C.C. does not regulate the issue and leaves carriage to the discretion of the cable television operator, the cable television operator must still comply with all state and local laws in exercising its grant of discretion. This would include state civil rights laws and state anti-trust laws.

Spectrum has been processing KAKZ's application for carriage with the belief that KAKZ has no remedy whatsoever if Spectrum declined to carry its signal because the F.C.C. does not require carriage. While the FCC is still charged with regulating the airways, state and federal courts do have jurisdiction to award damages to victims for violations of state or local laws by Spectrum.

There are numerous California cases conferring jurisdiction to California Courts to assess damages against Cable Television Providers who violate California law in their activities. Established California law holds that the neither the Cable Television Consumer Protection and Competition Act of 1992 or the Cable Communications Policy Act preempt California from jurisdiction of anti-trust claims under the Cartwright Act or the Unruh Civil Rights Act (*see Morrison vs. Viacom*, 52 Cal. App. 4th 1514; *Total TV vs. Palmer Communications, Inc.*, 69 F. 3d 298).

The FCC has no jurisdiction to award damages to anyone who is damaged by a licensee's violation of state laws and regulations. The following passages show it is established law that the FCC has no jurisdiction over state law claims:

> "Primary jurisdiction is a doctrine which requires that issues within an agency's special expertise be decided by the appropriate agency. Under this doctrine, claims must be referred to an agency if (1) the administrative agency has the authority to resolve the issues that would be referred to it by the Court; (2) the agency has special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues; and (3) the claim before the court involves issues that fall within the scope of a pervasive regulatory scheme creating a danger that judicial action would conflict with the regulatory scheme."

*Tenore vs. AT&T Wireless Services* (1998), 136 Washington 2d 322, 345

> "The Companies are correct that the Commission lacked the legal authority to discuss the merits of their state-law *quantum meruit* claims. Congress has vested the Commission only with the authority to address allegations of actions taken "in contravention of" the Communications Act. 47 *U.S.C.* Section 208(a). A state common law claim, by definition, does not arise under or state a violation of the Communications Act, and thus falls outside the scope of the Commission's jurisdiction."

*All Am. Tel. Co. vs. FCC*, (2017), 867 F. 3d 81, 94

The FCC does **not** have jurisdiction to adjudicate damage claims based exclusively on state law. Only state courts, or Federal Courts based on diversity jurisdiction, have jurisdiction over claims for damages based on state law. Before blindsiding you with litigation filed in the Superior Court for Palm Springs, California, I wanted to take this opportunity to present my theories of recovery to you so that you will have time to consult with your attorneys; discuss your alternatives with them; and perhaps eliminate the need for litigation by settling prior to the initiation of litigation.

California has enacted some very powerful legislation that, in my opinion, subjects Spectrum, and each of you individually to multi-million dollar damage awards. While federal law may or may not preempt the jurisdiction of a California Court to award injunctive relief requiring carriage of KAKZ, I am **not** going to take the risk of muddying the waters by creating a jurisdictional issue by seeking injunctive relief. The litigation contemplated will seek only actual damages for your state law violations. KAKZ has provable damages of $600,000.00 per year based on advertising orders actually

placed to take effect once Spectrum grants us carriage. The act requires this number to be trebled and, in addition, earn pre-judgment interest at the rate of 10% per annum. By the time this case gets to trial, the potential award will be $7,200,000.00 plus interest at 10% per annum from April, 2015. Therefore, the size of the potential monetary award and its continuing nature is sufficient to eliminate the need to create any jurisdictional issues by seeking specific performance.

KAKZ is only one out of hundreds, and maybe thousands, of low power stations wanting carriage through Spectrum. Once this litigation is filed and becomes a public record, it will be circulated throughout the low power television industry, and multiple litigation will become possibly a billion dollar nightmare for Spectrum. KAKZ has no desire to start this avalanche; KAKZt is only interested in being carried on Spectrum. I am hopeful that Spectrum will research these issues and decide to eliminate the need for litigation by providing carriage to KAKZ. If the carriage matter can be resolved, KAKZ and I are willing to sign confidentiality agreements with Spectrum that will prevent disclosure of this settlement or the issues upon which it would be based to the general public or to anyone else in the industry.

## THE HISTORY

KAKZ has been seeking carriage on Spectrum and its predecessor, Time Warner, since July 1, 2015. Basically, my client has been given the run-a-round. Everyone promises Spectrum is considering carriage but nothing ever happens.

This process started in earnest with a telephone conversation shortly after August 31, 2015 with Keely Bostock. Keely verbally promised carriage for all of KAKZ's stations once the digital conversion was completed and freed up bandwidth. KAKZ advised Keely that it transmits in standard definition, which Keely acknowledged would make it much easier because it uses much less bandwidth. The digital conversion was completed in April, 2016, but KAKZ's continual requests for carriage went unanswered.

Finally, Keely told the KAKZ sales manager, Martin Serna, in April, 2017, that Spectrum would only consider carrying KAKZ's Azteca America channel, and refused to carry any of its other channels. However, when KAKZ sought carriage for Azteca America alone, Martin was told KAKZ needed to have a local feel to it, even though Azteca America is the second largest Latino broadcaster and is not carried in our service area by Spectrum. KAKZ thought this was unreasonable, but KAKZ still invested an additional $20,000.00 to create a local Latino newscast.

KAKZ has just been told by that Mr. Alexis Johnson, Vice-President, Content Acquisition, in a telephone call that Spectrum will not carry any of its signals, including the Azteca America signal, "at this time". Mr. Johnson has given KAKZ no reason, except for the vague statement that Spectrum is not required by the FCC to carry low power stations.

Spectrum is absolutely correct in this statement. Issuing an injunction to require a cable company to carry the signal of any television station, including a low power station, is probably within the exclusive jurisdiction of the Federal Communications Commission. No court in California probably has jurisdiction to issue any injunctive relief requiring Spectrum to carry my client's signal. The same limitation, however, does not apply to an award of damage for violations of state law. State law damages are addressed in the balance of this letter and an issue Spectrum may wish to carefully consider **before** its forces litigation by refusing to carry KAKZ's channels.

## ESTABLISHING THE PRIMA FACIA CASE OF A DISCRIMINATION CLAIM

The proposed lawsuits claim damages for unlawful discrimination under California law. As you may know, the procedure to plead a discrimination claim is very simple. The victim needs to plead that the victim is a member of a protected class, and that the victim has suffered a disparate act. In the case of KAKZ, this claim is easily established.

The Palm Springs market is 51.4% Latino. The Palm Springs market is served by nine television stations, only four of which are full power and five of which are low power. The non-Latino population of 49.6% is served by seven television stations, four of which are full power and three of which are low power. The Latino population of 51.4% is served by only two television stations, both of which are low power stations. These statistics establish a prima facia case of discrimination against the 51.4% majority Latino population.

60% of the homes in the Palm Springs market receive their signal through Spectrum cable service. A television station cannot be an economically viable business when it is denied access to 60% of the homes in the market.

KAKZ can establish it is a member of a protected class because it serves the Latino community, and, in addition thereto, it is suffering a disparate act because Spectrum is denying it access to 60% of the Palm Springs market. These facts alone state a prima facia case of discrimination.

A similar analysis can be made for the programming on the KAKZ Coachella Valley Classic TV channel and the KAKZ Westerns 4 U channel. Coachella Valley Classic TV and Westerns 4 U features program that have not been seen for 50 years, but are fondly remembered and desired to be seen by the population over age 65, who remember seeing these programs as children. The over 65 population is 32.5% of the Palm Springs market, and it, too, is under served by the existing channels of ABC, CBS, FOX, and ABC which broadcast shows that are primarily of interest to those under age 45.

Although not as persuasive as the Latino discrimination claim, KAKZ can establish it is a member of a protected class because it serves the over age 65 community, and, in addition thereto, it is suffering a disparate act because Spectrum is denying it access to 32.5% of the Palm Springs senior market. Therefore, KAKZ can state a prima facia case as to its other channels as well.

## LEGITIMATE NON-DISCRIMINATORY REASON

Once a claimant makes the relatively easy showing described above, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the conduct at issue. Spectrum may well have a legitimate, non-discriminatory reason, but Spectrum has not, to date, articulated one to KAKZ. The only semblance of a reason is that KAKZ is a low power television station and since the F.C.C. does not classify low power television stations as "must carry", Spectrum believes can and will exclude low power television stations from its system for any reason it wants or for even no reason or an illegal reason. Since the Latino community in the Palm Springs market is under served and being discriminated against by this decision and since both Latino stations are low power stations, I believe Spectrum will have great difficulty convincing a jury composed of Palm Springs residents (51.4% Latino) that Spectrum has a legitimate, non-discriminatory reason for refusing to carry the KAKZ signals.

## CLAIM FOR VIOLATION OF UNRUH CIVIL RIGHTS ACT
### (California Civil Code Section 51 et. seq.)

The Unruh Civil Rights act is one of the most far reaching civil rights statutes ever enacted. Basically, it pretty much requires every single business located in California to offer its services on the same terms and conditions to *everyone* doing business in California. This statute has no exclusion for Low Power Television Stations! The statute reads as follows:

51. Citation of section; Civil rights of persons in business establishments; Definitions

(a) This section shall be known, and may be cited, as the Unruh Civil Rights Act.

6

(b)  All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

COMMENT: This statute provides that *everyone* within this state is free and equal and entitled to " full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." There is no way to interpret this statute that will permit Spectrum to refuse to carry the KAKZ signal without violating this statute. *California Civil Code Section* 51.5 (b) goes on to define a "person" as "any person, firm, association, organization, partnership, business trust, corporation, limited liability company, or company". Accordingly, this statute applies to KAKZ, which is a California Limited Liability Company.

The FCC laws and regulations afford no safe harbor. The FCC laws and regulations state that there is no FCC law or regulation which **requires** the Spectrum to carry a low power station. Other than the failure to require carriage, the FCC grants complete discretion to cable television companies as to whether or not to carry a low power television station (47 *Code of Federal Regulations* 76.56). There is nothing in this grant of discretion that grants Spectrum a safe harbor to violate state and local statutes by discriminating against KAKZ because it is a low power television station.

### 51.5. Discrimination by business establishment prohibited

(a)  No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers, because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics.

(b)  As used in this section, "person" includes any person, firm, association, organization, partnership, business trust, corporation, limited liability company, or company

COMMENT: It appears that the refusal of Spectrum to provide Azteca America to the 51% Latino majority of the Palm Springs market constitutes an additional clear violation of *California Civil Code* 51.5.

7

**52. Actions for damages and other relief for denial of rights**

(a)  Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

(h)  For the purposes of this section, "actual damages" means special and general damages. This subdivision is declaratory of existing law.

**COMMENT:** Martin Serna, the KAKZ Vice-President of Sales, has commitments from local businesses to purchase advertising on KAKZ as soon as its signal is carried by Spectrum. These commitments total FIFTY THOUSAND DOLLARS ($50,000.00) per **month**, or $600,000.00 per year! Mr. Serna is prepared to provide testimony as to the identity and amount of advertising committed to by each of these advertisers. The advertisers themselves can be served with subpoena's and will also give corrobating testimony. Since the initial commitment by Keely was to carry the signal of KAKZ after conversion to digital in April, 2016, this means that KAKZ can document a damage claim of $1,000,000.00 through and including November, 2017, and the statute allows the jury to award treble damages making the award as much as $3,000,000.00 for this period. Of course, by the time the case gets to trial, each of these amounts will have tripled because of the two to three years it will take to bring this case to trial. Accordingly, a verdict of $9,000,000.00 is very likely when liability is established.

None of these actions can force Spectrum to carry the signal of KAKZ. While injunctive relief may be available under the statute, KAKZ will elect not raise any jurisdictional issues by seeking injunctive relief. KAKZ will only seek remedies that are undisputably within the jurisdiction of a California Court which are to award monetary damages. If Spectrum wants to pay KAKZ much as $150,000.00 per month **not** to carry its signal, KAKZ is prepared to live with that result.

## CLAIM FOR VIOLATION OF CALIFORNIA CONSPIRACY AGAINST TRADE ACT
## CARTWRIGHT ACT (California Business and Professions Code 16721)

The Cartwright act classifies a violation of the Unruh Civil Rights Act as a violation of free trade and commerce, and imposes significant additional consequences if civil judgment for damages is entered in favor of a victim, including authorizing the California Attorney General or a District Attorney to seek judicial dissolution of the business and forfeit of the corporate charter. The pertinent provisions of the statute reads as follows:

### 16721. Unlawful discriminating exclusion from business transaction

Recognizing that the California Constitution prohibits a person from being disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin, and guarantees the free exercise and enjoyment of religion without discrimination or preference; and recognizing that these and other basic, fundamental constitutional principles are directly affected and denigrated by certain ongoing practices in the business and commercial world, it is necessary that provisions protecting and enhancing a person's right to enter or pursue business and to freely exercise and enjoy religion, consistent with law, be established.

(a)  No person within the jurisdiction of this state shall be excluded from a business transaction on the basis of a policy expressed in any document or writing and imposed by a third party where that policy requires discrimination against that person on the basis of any characteristic listed or defined in subdivision (b) or (e) of Section 51 of the Civil Code or on the basis that the person conducts or has conducted business in a particular location.

(b)  No person within the jurisdiction of this state shall require another person to be excluded, or be required to exclude another person, from a business transaction on the basis of a policy expressed in any document or writing that requires discrimination against that other person on the basis of any characteristic listed or defined in subdivision (b) or (e) of Section 51 of the Civil Code or on the basis that the person conducts or has conducted business in a particular location.

(c)  Any violation of any provision of this section is a conspiracy against trade.

**COMMENT:** The facts forming the basis of the violation of the Unruh Civil Rights Act likewise constitute the violation of the California Conspiracy Against Trade Act.

9

**16750. Actions for damages; Actions by Attorney General; Cooperation by Attorney General with other litigants; Actions by District Attorney**

(a) **Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction** in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy, **and to recover three times the damages sustained by him or her, interest on his or her actual damages pursuant to Section 16761**, and preliminary or permanent injunctive relief when and under the same conditions and principles as injunctive relief is granted by courts generally under the laws of this state and the rules governing these proceedings, **and shall be awarded a reasonable attorneys' fee** together with the costs of the suit.

This action may be brought by any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant.

**COMMENT:** This statute increases the award allowed by the Unruh Civil Rights Act by allowing the victim to receive pre-judgment interest at 10% and reasonable attorney fees.

**16752. Proceedings for dissolution of corporations and associations**

Upon a violation of this chapter by any corporation or association the Attorney General or the district attorney of the proper county may institute proper proceedings in a court of competent jurisdiction for the forfeiture of charter rights, franchises or privileges and powers exercised by such corporation or association, and for the dissolution of the corporation or association.

**COMMENT:** This statute grants jurisdiction to either the California Attorney General or any California District Attorney to seek a forfeiture of Spectrum's charter rights, franchise, or privileges and powers once my client's litigation results in a favorable verdict. My client, of course, would have no control over whether or not any such proceedings are initiated, but the statute provides that forfeiture is one of the consequences if my client receives a favorable award.

## 16753. Revocation of licenses of foreign corporations

Every foreign corporation or association, exercising any of the powers, franchises or functions of a corporation in this state, which violates this chapter, is subject to revocation of those powers, franchises or functions and upon such revocation is prohibited from doing any business in this state. The Attorney General, or a district attorney of a county where the offense or any part thereof is committed, may enforce this provision by bringing proper proceedings by injunction or otherwise. Upon receipt of a certified copy of the judgment and decree of any court of competent jurisdiction finding any foreign corporation or association guilty of violating this chapter and ordering a revocation of its powers, franchises or functions of a corporation in this state, the Secretary of State shall revoke the license of any such corporation or association heretofore authorized to do business in this state.

**COMMENT:** This section also applies since Spectrum is not a California corporation. KAKZ has no control over whether or not any such proceedings are initiated, but the statute provides that forfeiture is one of the consequences if KAKZ receives a favorable judgment.

## 16755. Punishment for violations; Limitation of actions; Disposition of fines

(a) Any violation of this chapter is a conspiracy against trade, and any person who engages in any such conspiracy or takes part therein, or aids or advises in its commission, or who as principal, manager, director, agent, servant or employee, or in any other capacity, knowingly carries out any of the stipulations, purposes, prices, rates, or furnishes any information to assist in carrying out such purposes, or orders thereunder or in pursuance thereof, is punishable, as follows:

(1) If the violator is a corporation, by a fine of not more than one million dollars ($1,000,000) or the applicable amount under paragraph (3), whichever is greater.

(2) If the violator is an individual, by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for one, two, or three years, by imprisonment for not more than one year in a county jail, by a fine of not more than the greater of two hundred fifty thousand dollars ($250,000), a fine of the applicable amount under paragraph (3), or by both a fine and imprisonment.

11

(3) If any person derives pecuniary gain from a violation of this chapter, or the violation results in pecuniary loss to a person other than the violator, the violator may be fined not more than an amount equal to the amount of the gross gain multiplied by two or an amount equal to the amount of the gross loss multiplied by two, whichever is applicable.

(b) Any action pursuant to this section may be commenced at any time within four years after the commission of the last act comprising a part of any violation. No cause of action barred under existing law on the effective date of the amendment of this section at the 1977-78 Regular Session of the Legislature shall be revived by such amendment.

(c) Subject to Section 13521 of the Penal Code, all moneys received by any court in payment of any fine or civil penalty imposed pursuant to this section shall, as soon as practicable after receipt thereof, be deposited with the county treasurer of the county in which the court is situated. Amounts so deposited shall be paid as soon as practicable as follows: 100 percent to the Treasurer by warrant of the county auditor drawn upon the requisition of the clerk or judge of said court to be deposited in the State Treasury on order of the Controller if the moneys received resulted from an action initiated and prosecuted by the Attorney General. If the action was initiated and prosecuted by a district attorney then 100 percent shall be paid as soon as practicable to the treasurer of the county in which the prosecution is conducted. If the action was initiated and prosecuted jointly by the Attorney General and a district attorney or jointly by more than one district attorney, such amounts shall be paid to the State Treasurer and to the treasurer(s) of the county or counties participating in the prosecution in a proportion agreed upon by the agencies jointly prosecuting such case and as approved by the court.

**COMMENT:** This statute creates substantial exposure for both the corporation and the individuals who are adjudged to have violated this statute. KAKZ has no control over whether or not any such proceedings are initiated, but the statute provides that significant penalties for the both the corporate and the individual defendants who are adjudged by a civil court to have violated these statutes. A judgment in favor of KAKZ would be sufficient to create exposure under this statute.

### 16761. Prejudgment interest

The court may award, pursuant to a motion by a person who has recovered damages pursuant to Section 16750, or by the Attorney General who has secured monetary relief pursuant to Section 16760, interest on actual damages at the rate of 10 percent per annum for the period

12

beginning on the date of service of such person's or the Attorney General's complaint setting forth a claim for violation of this chapter and ending on the date of judgment, or for any shorter period therein, if the court finds that the award of interest for such period is just in the circumstances. In determining whether an award of interest under this section for any period is just in the circumstances, the court shall consider only the following:

(a) Whether the person, the Attorney General, or the opposing party, or the representative of any of those parties, made motions or asserted claims or defenses so lacking in merit as to show that the party or representative acted intentionally for delay, or otherwise acted in bad faith.

(b) Whether, in the course of the action involved, the person, the Attorney General, or the opposing party, or the representative of any of those parties, violated any applicable rule, statute, or court order providing for sanctions for dilatory behavior or otherwise providing for expeditious proceedings.

(c) Whether the person, the Attorney General, or the opposing party, or the representative of any of those parties, engaged in conduct primarily for the purpose of delaying the litigation or increasing the cost thereof.

## SUMMARY

There are two California statutory forms of relief that Spectrum has probably not considered when the decision was made to deny KAKZ carriage. I suggest Spectrum immediately refer this matter to its counsel so that it may receive an independent opinion as to the extent of Spectrum's exposure on these theories of recovery and then re-evaluate its decision in light of the input Spectrum receives receive from its legal counsel..

## PRELIMINARY NEGOTIATIONS

I am providing copies of all previous correspondence seeking carriage on Spectrum. I suggest Spectrum carefully review these letters and e-mails generated by each of it in response to KAKZ's requests. I believe these documents will make defense of this lawsuit very difficult.

13

## SETTLEMENT PROPOSAL

KAKZ does not really want to file a suit seeking monetary damages, even through such a suit would ultimately be successful and produce a recovery of five to ten million dollars. All KAKZ and I want is what KAKZ has been asking for since 2015, which is that Spectrum to provide carriage to all four channels being broadcast by KAKZ Television, Channel 4, Palm Springs with a reasonably low channel assignment.

KAKZ and I recognize that once this litigation is filed and becomes public, settlement will be impossible for Spectrum. Once this case with this new theory of recovery is filed, becomes public, and is circulated throughout the low power television industry, hundreds if not thousands of other low power operators will be filing similar litigation against Spectrum. Spectrum will have to employ an army of attorneys to just to defend all of these claims, and settlement of one will result in the settlement of all. Once this litigation is filed, the business model of Spectrum is going to have to change, either by significantly increasing its legal expense to defend these claims or changing its procedures for the carriage of low power television stations.

If Spectrum chooses to settle with KAKZ, Spectrum may still receive hundreds of other claims of other operators and their attorneys become aware that these types of remedies may become available. KAKZ and I cannot do anything to abate this risk. However, if Spectrum settles with KAKZ, we can provide assurances that KAKZ and I will not be responsible for providing others with the information and legal theories upon which this claim is based.

If this case is settled before litigation is filed, KAKZ and I can agree to an iron clad confidentiality agreement which, under California law, is fully enforceable. I cannot guarantee that no one else will ever make such as claim. I can only guarantee that my client and I will not provide the information to enable it.

I am in the process now of drafting the Compliant and other associated pleadings and documents. I do not anticipate that the pleadings will be ready to file before November 27, 2017. Accordingly, if you are interested in resolving this case without litigation, please contact me before the close of business on November 27, 2017. Otherwise, it may be too late to settle without public disclosure.

14

Very truly yours,

LAW OFFICES OF CLARK GAREN

BY

CLARK GAREN

cc:
Daniel J. Bollinger,
Vice-President and Associate General Counsel,
Charter Communications. Inc.,
Legal Department,,
12405 Powerscourt Drive,
St. Louis, Missouri 63131

15

**TARA BROADCASTING,**
*a Limited Liability Company,*
*doing business as KAKZ-LD TELEVISION*
*Old Tyme Television on*
*Palm Springs Digital Channel 4.1*
*Post Office Box 1790*
*Palm Springs, California 92263*
*(760) 323-4901*
*Fax: (760) 288-4080*

July 2, 2015

Ms. Gina Wulfestieg,
Los Angeles County Regional
Senior Manager of Field Program
and Implementation Marketing
Time Warner Cable,
550 North Centinela Blvd.,
El Segundo, California 90245
Via Federal Express

      Re:    Request for Carriage Agreement under 47 *United States Code* 534

Dear Ms. Wulfestieg:

## OUR REQUESTS

KAKZ - LD Television is submitting this formal request pursuant to 47 *United States Code* 534. We are making a formal request under the statute that Time Warner Cable to distribute the signal of our station, KAKZ-LD, on its Eastern Riverside County cable systems and in particular in the Coachella Valley. We are a 1,000 watt Low Power station airing on Channel 4 and our signal can be received from North Palm Springs to Indio and the Salton Sea.

While we have four digital channels, we are only requesting distribution of our primary signal that transmits on digital 4.1 and our secondary signal that transmits on 4.3. Our primary channel broadcasts *Old Tyme Televison* and locally produced programming; our secondary 4.3 channel broadcasts the Azteca America network. (We are the Palm Springs affiliate of Azteca America.)

47 *United States Code* 534(b)(2)(B) reads as follows:

"If the cable operator elects to carry an affiliate of a broadcast network (as such term is defined by the Commission by regulation), such cable operator shall carry the affiliate of such broadcast network whose city of license reference point, as defined in section 76.53 of title 47, Code of Federal Regulations (in effect on January 1, 1991), or any successor regulation thereto, is closest to the principal headend of the cable system.

47 *United States Code* 339(d)(5) defines a television network as:

"The term, "television network", means a television network in the United States which offers at least an interconnected program service on a regular basis for 15 or more hours per week to at least 25 affiliated broadcast stations in 10 or more states."

Azteca America satisfies the 47 *United States Code* 339(d)(5) definition of is a television network. Currently, Time Warner appears to be carrying the Los Angeles affiliate of Azteca America in the Coachella Valley and Eastern Riverside County (the broadcast coverage area of KAKZ) on Channels 20, 27, and 54 instead of our signal. I believe that 47 *United States Code* 534(b)(2)(B) requires that you carry our Azteca America broadcast on Digital Channel 4.3 instead of the Los Angeles affiliate. Therefore, we are requesting that you start carrying our Azteca America broadcast signal instead of the one from Los Angeles.

We are also requesting that Time Warner carry our primary channel, Channel 4.1. Our programming on Channel 4.1 is our catalogue of over 6,000 broadcast television shows and movies that KAKZ purchased the broadcast rights for in our market in perpetuity together with locally produced shows. We provide a more complete description of the programming on Channel 4.1 later in this request.

If, for some reason, you are only able to carry one of our channels, we would prefer that you carry 4.1 instead of 4.3. . In order to accommodate this, we would be willing to execute a written waiver of our apparent right to have Azteca America 4.3 carried instead of the Los Angeles Azteca America affiliate. However, we really believe that you should carry both because our programming is of such interest to the community and is not available elsewhere.

## OUR HISTORY

We acquired a 100 watt station from Sim Farar three years ago. We then obtained a construction permit to increase the power to 1000 watts and change our antenna coverage to cover the entire Coachella Valley. We were able to do this because Entravision abandoned its Class A Channel 4 analog license on Indio Hill and instead obtained a low power license for Channel 41. This enabled us to change our antenna coverage to include the entire Coachella Valley. After we were able to increase our power, we acquired the rights to an extensive digital film and television show library.

## OUR PROGRAMMING

Channel 4.1 now carries *Old Tyme Television* from our television library of over 6,000 tiles plus locally produced programming and some nationally syndicated programming. Enclosed with our package is a catalogue of our owned film library. We own several hundred movies and several thousand television shows which is primarily what we broadcast. These are old television shows that have not been broadcast for more than 60 years, including My Little Margie with Gale Storm and Charles Farrell (who used to be the Mayor of Palm Springs); The Milton Berle Show; The Colgate Comedy Hour; Westinghouse Studio One; Playhouse 90; The Adventures of Ozzie and Harriet, and many other famous classic television shows. Palm Springs is a particularly good market for this programing because many of the people who participated in the creation of these shows, or their descendants, both in front of the camera and behind it, now live in Palm Springs and find this programing particularly interesting. We have branded this station as *Old Tyme Television*.

While there are several cable networks airing classic television, like ME TV, none of these channels are airing the programs in the catalogue we acquired. We are the only television station in the Palm Springs market, including cable networks, which are now airing these shows.

We believe that this catalogue will acquire a substantial share of viewers in this market. We are already received more than 100 e-mails from viewers excited about our new offering, and we have not even started advertising this channel and its content yet.

In addition to the catalogue, we broadcast new television shows and television shows we create in our broadcast studio. I used to host a drive time radio show on KPSI and KPSL, Palm Springs, and I have my own television show that airs nightly. We also have invited other members of the television and radio community to create shows in our studio, and we expect to offer a substantial line-up of shows that are created in our studio.

3

We have a 3,000 square foot television studio capable of producing network quality live television shows. We have three cameras, teleprompters, Chromakey, and roof lighting. I have included pictures of our facility with this presentation. If you are ever in Palm Springs, we would love to provide you with a tour of our station.

We are, in essence, a full power television station. Our staff includes two license broadcast engineers, including one who is a member of the Society of Broadcast Engineers. I am also enclosing biographies of the principals and key employees of our station.

## OUR MANAGEMENT TEAM

The owners and managers of KAKZ-LD have extensive business experience, both in broadcasting and other endeavors. Clark Garen, an attorney in California since 1972, has been in the entertainment business since the late 1980's, and has experience as a performer in radio and television. Jim and Mary Fitzpatrick, his partners, started their business careers in the finance business and ended up starting a collection agency which became one of the 100 largest collection agencies in the United States. They sold in 2000 when Jim was diagnosed with prostate cancer. However, the treatments were successful and Jim and Mary are now looking for new challenges in the broadcast industry.

The Vice-President of Engineering, Wilber Mahoney, has a FCC Commercial Operator License and is probably the best broadcast engineer in Eastern Riverside County. He came to KAKZ after many years working for the NBC network affiliate in Las Vegas, Nevada.

Our consulting engineer, William C. Margiotta, is a Senior Member of the Society of Motion Picture and Television Engineers (SMPTE) and a life member of the Electrical and Electronic Engineers (IEEE).

Complete resume's of our management team are attached to this proposal.

## OUR PROPOSAL

We are prepared to provide our signal that we broadcast on 4.1 (*Old Tyme television*) and 4.3 (Azteca America) to you at no charge for carriage. While we believe the broadcast signal received at your facility is of broadcast quality, we are also prepared to provide you with a hard wire or microwave signal. We currently have a commercial installation of Time Warner Road Runner Internet Service at our studio which can carry the signal if necessary. We are also willing to pay to install a dedicated line to bring the signal to your distribution facility.

As a further inducement to carry our channels, we are prepared to offer joint marketing efforts. We are willing, as part of the carriage agreement, to air Time Warner advertisements at no charge. Finally, we do not currently accept Infomercials, and have no intention of doing so, so we are not competing with Time Warner in selling infomercial time.

We would like to arrange a meeting with you at your facility in El Segundo when you have had an opportunity to review this presentation to answer any additional questions you may have.

Very truly yours,

TARA BROADCASTING, LLC

BY

CLARK GAREN,
MANAGING MEMBER

Enclosures:
1. Resume of Clark Garen
2. Resume of James B. Fitzpatrick
3. Resume of Mary E. Fitzpatrick
4. Resume of Wilber R. Mahoney
5. Resume of William C. Margiotta
6. KAKZ Owned Feature Film Library
7. KAKZ Owned Television Show Library
8. Photo Page of KAKZ Television Studio in North Palm Springs, California

5

*TARA BROADCASTING,*
*a Limited Liability Company,*
*doing business as KAKZ-LD TELEVISION*
*Old Tyme Television on*
*Palm Springs Digital Channel 4.1*
*Post Office Box 1790*
*Palm Springs, California 92263*
*(760) 323-4901*
*Fax: (760) 288-4080*

August 25, 2015

Ms. Gina Wulfestieg,
Senior Manager of Field Program
and Implementation Marketing
Time Warner Cable,
6021 Katella Avenue,
Cypress, California 90630
Via Federal Express, next day delivery

   Re:    Request for Carriage Agreement under 47 *United States Code* 534

Dear Ms. Wulfestieg:

On July 6, 2015, you received my request for Carriage Agreement under 47 *United States Code* 534. On July 29, 2015, you wrote me that you were reviewing the request and would get back to me shortly. In early August, I reached you on the telephone and you said the proposal was being reviewed by your New York office and that I should hear something shortly.

It is now August 25, 2015, and your 30 day period to respond has expired long ago. Please let me know when I may expect to receive a response. Otherwise, I am going to have to submit my Complaint to the FCC.

1

In addition, you advised me when we talked that Time Warner does not carry Azteca America in our service area of the Coachella Valley. Since Azteca America is the third largest Spanish network in the country and is the exclusive carrier of soccer and other very popular sports, and since the Coachella Valley is the 38th Spanish market in the country, it is suggested that Time Warner has a duty to its customers to carry this channel. In addition, Time Warner does carry Azteca America in the Eastern Riverside County areas of Beaumont, Banning, and Yucca Valley. Each of these communities are now within our coverage map. Therefore, the must carry provisions of the statute require Time Warner to carry our channel instead of the Los Angeles affiliate on its cable system servicing these communities.

We would like to arrange a meeting with you at your new location in Cypress when you have had an opportunity to review this presentation to answer any additional questions you may have.

Finally, many of your customers are contacting my station and asking how they can receive my station on Time Warner. They have heard about my station from viewers who are receiving it by antenna, and they want to receive it on Time Warner. I am going to start giving them your contact information unless you give me the contact information for the person in New York who is reviewing our request for carriage.

Very truly yours,

TARA BROADCASTING, LLC

BY

CLARK GAREN,
MANAGING MEMBER

2.

*TARA BROADCASTING,*
*a Limited Liability Company,*
*doing business as KAKZ-LD TELEVISION*
*Old Tyme Television on*
*Palm Springs Digital Channel 4.1*
*Post Office Box 1790*
*Palm Springs, California 92263*
*(760) 323-4901*
*Fax: (760) 288-4080*

August 31, 2015

Ms. Keely Goldberg Bostock,
Vice-President of Content Acquisition,
Time Warner Cable,
160 Iverness Drive West,
Englewood, Colorado 80112
Via Federal Express

    Re:    Request for Carriage Agreement under 47 *United States Code* 534

Dear Ms. Bostock:

Welcome back from your Labor Day vacation.

I am submitting this request to you pursuant to instructions I received from Gina Wulfestieg, the Los Angeles County Regional Senior Manager of Field Program and Implementation Marketing. I previously submitted this request to her, and she just advised me that it should now be directed to you. You may have previously received part of this package from her. She advised me that you would be gone until after the Labor Day weekend.

## OUR REQUESTS

KAKZ - LD Television is submitting this formal request pursuant to 47 *United States Code* 534. We are making a formal request under the statute that Time Warner Cable to distribute the signal of our station, KAKZ-LD, on its Eastern Riverside County cable systems and in particular in the Coachella Valley. We are a 1,000 watt Low Power station airing on Channel 4 and our signal can be received from North Palm Springs to Indio and the Salton Sea.

1

While we have four digital channels, we are only requesting distribution of our primary signal that transmits on digital 4.1 and our secondary signal that transmits on 4.3. Our primary channel broadcasts *Old Tyme Televison* and locally produced programming; our secondary 4.3 channel broadcasts the Azteca America network. (We are the Palm Springs affiliate of Azteca America.)

The Azteca America network that we carry on Channel 4.3 is the third largest Spanish network in America, and while the Coachella Valley is the 149th market for English Speakers; it is the 38th market for Spanish Speakers. Azteca America has expanded its programming to include exclusive broadcast rights to sporting events and should be carried by Time Warner to provide adequate cable service to the community it serves.

Our programming on Channel 4.1 is our catalogue of over 6,000 broadcast television shows and movies that KAKZ purchased the broadcast rights for in our market in perpetuity together with locally produced shows. We provide a more complete description of the programming on Channel 4.1 later in this request. If, for some reason, you are only able to carry one of our channels, we would prefer that you carry 4.1 instead of 4.3.

## OUR HISTORY

We acquired a 100 watt station from Sim Farar three years ago. We then obtained a construction permit to increase the power to 1000 watts and change our antenna coverage to cover the entire Coachella Valley. We were able to do this because Entravision abandoned its Class A Channel 4 analog license on Indio Hill and instead obtained a low power license for Channel 41. This enabled us to change our antenna coverage to include the entire Coachella Valley. After we were able to increase our power, we acquired the rights to an extensive digital film and television show library.

## OUR PROGRAMMING

Channel 4.1 now carries *Old Tyme Television* from our television library of over 6,000 tiles plus locally produced programming and some nationally syndicated programming. Enclosed with our package is a catalogue of our owned film library. We own several hundred movies and several thousand television shows which is primarily what we broadcast. These are old television shows that have not been broadcast for more than 60 years, including My Little Margie with Gale Storm and Charles Farrell (who used to be the Mayor of Palm Springs); The Milton Berle Show; The Colgate Comedy Hour; Westinghouse Studio One; Playhouse 90; The Adventures of Ozzie and Harriet, and many other famous classic television shows. Palm Springs is a particularly good market for this programing because many of the people who participated in the creation of these shows, or their descendants, both in front of the camera and behind it, now live in Palm Springs and find this programing particularly interesting. We have branded this station as *Old Tyme Television*.

While there are several cable networks airing classic television, like ME TV, none of these channels are airing the programs in the catalogue we acquired. We are the only television station in the Palm Springs market, including cable networks, which are now airing these shows.

We believe that this catalogue will acquire a substantial share of viewers in this market. We are already received more than 1,000 e-mails from viewers excited about our new offering, and we have not even started advertising this channel and its content yet. In addition, we receive calls every week from viewers asking how they can receive KAKZ on Time Warner Cable.

In addition to the catalogue, we broadcast new television shows and television shows we create in our broadcast studio. I used to host a drive time radio show on KPSI and KPSL radio, Palm Springs, and I have my own television show that airs nightly. We also have invited other members of the television and radio community to create shows in our studio, and we expect to offer a substantial line-up of shows that are created in our studio.

We have a 3,000 square foot television studio capable of producing network quality live television shows. We have three cameras, teleprompters, Chromakey, and roof lighting. I have included pictures of our facility with this presentation. If you are ever in Palm Springs, we would love to provide you with a tour of our station. I have enclosed photographs of our facility for your review.

We are, in essence, a full power television station. Our staff includes two license broadcast engineers, including one who is a member of the Society of Broadcast Engineers. I am also enclosing biographies of the principals and key employees of our station.

## OUR MANAGEMENT TEAM

The owners and managers of KAKZ-LD have extensive business experience, both in broadcasting and other endeavors. Clark Garen, an attorney in California since 1972, has been in the entertainment business since the late 1980's, and has experience as a performer in radio and television. Jim and Mary Fitzpatrick, his partners, started their business careers in the finance business and ended up starting a collection agency which became one of the 100 largest collection agencies in the United States. They sold in 2000 when Jim was diagnosed with prostate cancer. However, the treatments were successful and Jim and Mary are now looking for new challenges in the broadcast industry.

The Vice-President of Engineering, Wilber Mahoney, has a FCC Commercial Operator License and is probably the best broadcast engineer in Eastern Riverside County. He came to KAKZ after many years working for the NBC network affiliate in Las Vegas, Nevada.

3

Our consulting engineer, William C. Margiotta, is a Senior Member of the Society of Motion Picture and Television Engineers (SMPTE) and a life member of the Electrical and Electronic Engineers (IEEE).

Complete resume's of our management team are attached to this proposal.

## OUR PROPOSAL

We are prepared to provide our signal that we broadcast on 4.1 (*Old Tyme television*) and 4.3 (Azteca America) to you at no charge for carriage. While we believe the broadcast signal received at your facility is of broadcast quality, we are also prepared to provide you with a hard wire or microwave signal. We currently have a commercial installation of Time Warner Road Runner Internet Service at our studio which can carry the signal if necessary. We are also willing to pay to install a dedicated line to bring the signal to your distribution facility.

As a further inducement to carry our channels, we are prepared to offer joint marketing efforts. We are willing, as part of the carriage agreement, to air Time Warner advertisements at no charge. Finally, we do not currently accept Infomercials, and have no intention of doing so, so we are not competing with Time Warner in selling infomercial time.

We would like to arrange a meeting with you at your office in Denver, Colorado when you have had an opportunity to review this presentation to answer any additional questions you may have.

Very truly yours,

TARA BROADCASTING, LLC
BY
CLARK GAREN,
MANAGING MEMBER

Enclosures:
1. Resume of Clark Garen
2. Resume of James B. Fitzpatrick
3. Resume of Mary E. Fitzpatrick
4. Resume of Wilber R. Mahoney
5. Resume of William C. Margiotta
6. KAKZ Owned Feature Film Library
7. KAKZ Owned Television Show Library
8. Photo Page of KAKZ Television Studio in North Palm Springs, California

4

*TARA BROADCASTING,*
*a Limited Liability Company,*
*doing business as KAKZ-LD TELEVISION*
*Old Tyme Television on*
*Palm Springs Digital Channel 4.1*
*Post Office Box 1790*
*Palm Springs, California 92263*
*(760) 323-4901*
*Fax: (760) 288-4080*

September 2, 2015

Mr. Gregory Cameron,
Senior Counsel, Programming,
Time Warner Cable,
60 Columbus Circle,
New York, New York 10023
Via Federal Express, Next Morning Delivery
Also Via Fax: (704) 945-1490

     Re:  Request  for  Carriage  Agreement  under  47  *United*
          *States Code* 534

Dear Mr. Cameron:

This letter is in response to your letter dated August 26,
2015.

Please be advised that I do have new information which should
change your understanding of the situation.

You have denied must carry status for KAKZ based on 47 U.S.
C. 534(h)(2)(F). I completely agree that Time Warner is not
required by 47 U.S.C. 534(h)(2)(F) to carry KAKZ, and never
submitted  a  request  for  carriage  under  47  U.S.C.
534(h)(2)(F).

1

While Time Warner is not required to carry KAKZ by 47 U.S.C. 534(h)(2)(F), it is required by 47 *United States Code* 534(b)(2)(B) to carry the KAKZ channel affiliated with the Azteca America network. Time Warner is carrying the Azteca America affiliate broadcasting as KAZA Television, Avalon, California in its cable system located in Banning, California. KAKZ's city of license reference point is closer to the principal headend of the Time Warner cable system delivering cable service to Banning, California than is the city of license reference of KAZA Television, Avalon, California. Therefore, 47 *United States Code* 534(b)(2)(B) does require Time Warner to carry the Azteca America signal of KAKZ.

47 *United States Code* 534(b)(2)(B reads as follows:

> "If the cable operator elects to carry an affiliate of a broadcast network (as such term is defined by the Commission by regulation), such cable operator shall carry the affiliate of such broadcast network whose city of license reference point, as defined in section 76.53 of title 47, Code of Federal Regulations (in effect on January 1, 1991), or any successor regulation thereto, is closest to the principal headend of the cable system."

> 47 *United States Code* 534(b)(2)(B)

This statute does not include the terms, "local commercial television station" or "qualified low power station". This statute **only** applies to affiliates of broadcast networks, *irrespective* of whether they are a local commercial television station; a qualified low power television station; or a low power television station. This statute applies anytime a cable operator is carrying an affiliate that fits the definition of a broadcast network, and it requires the cable system to carry the network affiliate that is closest to the principal headend of the cable system based on city of license reference point.

The reason for this is obvious. I cannot sell local advertising time in my market for my Azteca America affiliate if the cable system serving my market is broadcasting the signal of another Azteca America affiliate that is far away from my market. In this case, KAZA is over 150 miles away from my market; Banning is over 120 miles away from KAZA; and Banning is well within my local market being only 20 miles away from my city of license reference point.

Time Warner Cable is carrying the Los Angeles Affiliate of Azteca America (KAZA Television), which is broadcasting from Avalon on Catalina Island, California. Catalina Island is 22 miles west of the Southern California coastline in the middle of the Pacific Ocean on its cable system serving Eastern Riverside County and in particular the City of Banning, California. I have attached a program log obtained today from the Time Warner website on the Internet which shows that Time Warner is carrying the Catalina Island affiliate of Azteca America on its cable system serving Banning, Califonria (and all of Eastern Riverside County) on Channel 16.

I am also attaching a copy of our July, 2015 commission report from QVC Network (which we carry on our Channel 4.4) and this shows that our signal is actually received in Banning, California. (We carry Azteca America on Channel 4.3). As I stated earlier in this letter, KAZA's city of licence is Avalon, California, which is located on Catalina Island, California. KAZA's city of license is Cathedral City, California. Avalon is approximately 150 miles from Banning, while Cathedral City is approximately 20 miles from the KAKZ city of license reference point.

Therefore, it is my opinion that 47 *United States Code* 534(b)(2)(B) requires Time Warner cable to carry KAKZ Television instead of KAZA Television on all cable systems where Cathedral City is closer to the principal headend of Time Warner Cable. It is likely that Time Warner is required by this statute to carry KAKZ through most of Riverside and San Bernardino Counties, and possibly into San Bernardino

3

County, depending on where each principal headend of Time Warner is located.

You took over 60 days to respond to my July 2, 2015 communication, and I am worried that my time period to appeal to the FCC may expire if you take the same amount of time to respond to this letter. Therefore, unless we are able to reach some agreement in writing that your August 26, 2015 denial is withdrawn pending a response to this additional information, I will have no choice but to file an appeal to the FCC if I have not received a response by September 15, 2015.

Very truly yours,

TARA BROADCASTING, LLC

BY

CLARK GAREN,
ATTORNEY AT LAW,
MANAGING MEMBER

Enclosures:
1. Time Warner program schedule for Banning, California;
2. QVC Commission Report

*TARA BROADCASTING,*
*a Limited Liability Company,*
*doing business as KAKZ-LD TELEVISION*
*Old Tyme Television on*
*Palm Springs Digital Channel 4.1*
*Post Office Box 1790*
*Palm Springs, California 92263*
*(760) 323-4901*
*Fax: (760) 288-4080*

January 14, 2017

Ms. Keely Goldberg Bostock,
Vice-President of Content Acquisition,
Time Warner Cable,
60 Columbus Circle,
New York, New York 10023
Via Federal Express, Next Morning Delivery

Re:   Request for Carriage Agreement under 47 *United States Code* 534

Dear Ms. Bostock:

I am re-submitting this request to you. I previously submitted this request in August, 2015, and you responded by assuring me that as soon as Time Warner completed its digital conversion, you would find a place to carry my station. The digital conversion was completed in April, 2016, and since them, you have refused to respond to any of my phone calls or e-mails - even to tell me no!

## OUR REQUESTS

KAKZ - LD Television is submitting this formal request pursuant to 47 *United States Code* 534. We are making a formal request under the statute that Time Warner Cable to distribute the signal of our station, KAKZ-LD, on its Eastern Riverside County cable systems and in particular in the Coachella Valley.  We are now a 3,000 watt Low Power station airing on Channel 4 and our signal can be received from North Palm Springs to Indio and the Salton Sea.

While we have four digital channels. We are only requesting distribution of our primary signal that transmits on digital 4.1 and our secondary signals that transmits on 4.2 and 4.3. Our primary channel

1

broadcasts *Old Tyme Televison* and locally produced programming; our secondary 4.2 channel transmits Westerns 4 U, which is a very popular channel in the area, and 4.3 broadcasts the Azteca America network. (We are the Palm Springs affiliate of Azteca America.)

The Azteca America network that we carry on Channel 4.3 is the third largest Spanish network in America, and while the Coachella Valley is the 149th market for English Speakers; it is the 38th market for Spanish Speakers. Azteca America has expanded its programming to include exclusive broadcast rights to sporting events and should be carried by Time Warner to provide adequate cable service to the community it serves.

Our programming on Channel 4.1 is our catalogue of over 6,000 broadcast television shows and movies that KAKZ purchased the broadcast rights for in our market in perpetuity together with locally produced shows. We provide a more complete description of the programming on Channel 4.1 later in this request. If, for some reason, you are only able to carry one of our channels, we would prefer that you carry 4.1 instead of 4.3. However, we think you should carry all of our channels.

## OUR HISTORY

We acquired a 100 watt station from Sim Farar three years ago. We then obtained a construction permit to increase the power to 3000 watts and change our antenna coverage to cover the entire Coachella Valley. We were able to do this because Entravision abandoned its Class A Channel 4 analog license on Indio Hill and instead obtained a low power license for Channel 41. This enabled us to change our antenna coverage to include the entire Coachella Valley. After we were able to increase our power, we acquired the rights to an extensive digital film and television show library.

## OUR PROGRAMMING

Channel 4.1 now carries *Old Tyme Television* from our television library of over 6,000 tiles plus locally produced programming and some nationally syndicated programming. Enclosed with our package is a catalogue of our owned film library. We own several hundred movies and several thousand television shows which is primarily what we broadcast. These are old television shows that have not been broadcast for more than 60 years, including My Little Margie with Gale Storm and Charles Farrell (who used to be the Mayor of Palm Springs); The Milton Berle Show; The Colgate Comedy Hour; Westinghouse Studio One; Playhouse 90; The Adventures of Ozzie and Harriet, and many other famous classic television shows. Palm Springs is a particularly good market for this programing because many of the people who participated in the creation of these shows, or their descendants, both in front of the camera and behind it, now live in Palm Springs and find this programing particularly interesting.

We have branded this station as *Old Tyme Television*.

While there are several cable networks airing classic television, like ME TV, none of these channels are airing the programs in the catalogue we acquired. We are the only television station in the Palm Springs market, including cable networks, which are now airing these shows.

We believe that this catalogue will acquire a substantial share of viewers in this market. We are already received more than 1,000 e-mails from viewers excited about our new offering, and we have not even started advertising this channel and its content yet. In addition, we receive calls every week from viewers asking how they can receive KAKZ on Time Warner Cable.

In addition to the catalogue, we broadcast new television shows and television shows we create in our broadcast studio. I used to host a drive time radio show on KPSI and KPSL radio, Palm Springs, and I have my own television show that airs nightly. We also have invited other members of the television and radio community to create shows in our studio, and we expect to offer a substantial line-up of shows that are created in our studio.

We have a 3,000 square foot television studio capable of producing network quality live television shows. We have three cameras, teleprompters, Chromakey, and roof lighting. I have included pictures of our facility with this presentation. If you are ever in Palm Springs, we would love to provide you with a tour of our station. I have enclosed photographs of our facility for your review.

We are, in essence, a full power television station. Our staff includes two license broadcast engineers, including one who is a member of the Society of Broadcast Engineers. I am also enclosing biographies of the principals and key employees of our station.

## OUR MANAGEMENT TEAM

The owners and managers of KAKZ-LD have extensive business experience, both in broadcasting and other endeavors. Clark Garen, an attorney in California since 1972, has been in the entertainment business since the late 1980's, and has experience as a performer in radio and television. Jim and Mary Fitzpatrick, his partners, started their business careers in the finance business and ended up starting a collection agency which became one of the 100 largest collection agencies in the United States. They sold in 2000 when Jim was diagnosed with prostate cancer. However, the treatments were successful and Jim and Mary are now looking for new challenges in the broadcast industry.

3

The Vice-President of Engineering, Wilber Mahoney, has a FCC Commercial Operator License and is probably the best broadcast engineer in Eastern Riverside County. He came to KAKZ after many years working for the NBC network affiliate in Las Vegas, Nevada.

Our consulting engineer, William C. Margiotta, is a Senior Member of the Society of Motion Picture and Television Engineers (SMPTE) and a life member of the Electrical and Electronic Engineers (IEEE).

Our Vice-President of Sales, Martin Serna, retired as the General Manager of Telemundo in Palm Springs, and brought that statio to attract 40% of the hispanic market. We are fortunate that Mr. Serna has decided to join our team at KAKZ Television.

Complete resume's of our management team are attached to this proposal.

## OUR PROPOSAL

We are prepared to provide our signal that we broadcast on 4.1 (*Old Tyme television*) and 4.3 (Azteca America) to you at no charge for carriage. While we believe the broadcast signal received at your facility is of broadcast quality, we are also prepared to provide you with a hard wire or microwave signal. We currently have a commercial installation of Time Warner Road Runner Internet Service at our studio which can carry the signal if necessary. We are also willing to pay to install a dedicated line to bring the signal to your distribution facility.

As a further inducement to carry our channels, we are prepared to offer joint marketing efforts. We are willing, as part of the carriage agreement, to air Time Warner advertisements at no charge. Finally, we do not currently accept Infomercials, and have no intention of doing so, so we are not competing with Time Warner in selling infomercial time.

This is a perfect time for a launch, as Direct TV has stopped carrying the local NBC, CBS, and Telemundo affiliates. If I can obtain carriage on Time Warner, I am prepared to launch a mid five figure advertising campaign on local radio about our station and its carriage on Time Warner and including an announcement that Direct TV Customers can switch to Time Warner and get all of the local shows Direct TV is now not carrying, including my station. Time is of the essence, as we do not know how long it will be before Direct TV reaches a carriage deal with the local stations.

We would like to arrange a meeting with you at your office in New York or Denver, Colorado whenever you can make time for us after you have had an opportunity to review this presentation to answer any additional questions you may have.

4

Very truly yours,

TARA BROADCASTING, LLC

BY

CLARK GAREN,
MANAGING MEMBER

Enclosures:
1. Resume of Clark Garen
2. Resume of James B. Fitzpatrick
3. Resume of Mary E. Fitzpatrick
4. Resume of Wilber R. Mahoney
5. Resume of William C. Margiotta
6. Resume of Martin Serna
7. KAKZ Owned Feature Film Library
8. KAKZ Owned Television Show Library
9. Photo Page of KAKZ Television Studio in North Palm Springs, California

*TARA BROADCASTING,*
*a Limited Liability Company,*
*doing business as KAKZ-LD TELEVISION*
*Old Tyme Television on*
*Palm Springs Digital Channel 4.1*
*Post Office Box 1790*
*Palm Springs, California 92263*
*(760) 323-4901*
*Fax: (760) 288-4080*

February 7, 2017

Mr. Alexis Johnson,
Vice-President, Content Acquisition,
Charter Communications, Inc.,
400 Atlantic Street,
10th Floor,
Stamford, Connecticut 06901
Via Federal Express, Next Morning Delivery

　　　　Re:　　Request for Carriage Agreement under 47 *United States Code* 534

Dear Mr. Johnson:

Martin Breidsprecher gave me your contact information. I own the Azteca America Palm Springs affiliate, and I have been trying to get Time Warner to honor the verbal commitment Keely Bostick gave me in September, 2015 that she would arrange for Time Warner to carry my stations after the digital conversion was implemented. Attached are copies of all of my previous submissions to Keely, which explain the unique nature of my station and why Charter should provide us with carriage.

This is a particularly opportune time to provide us with carriage due to the problems your company is now having with Univision. The Azteca America network is very competitive with Univision and, frankly, offers a better program schedule that is more interesting to the hispanic community, along with all of the sports that the hispanic community loves to watch. If Charter were to start carrying Azteca America in place of Univision, I think your Spanish speaking customers would LOVE the change.

1

I would like to fly back to Stamford, Connecticut and meet with you personally at your earliest convenience to arrange for carriage of my station in Palm Springs, California. In addition, I know that Martin in also in contact with you and would be happy to file to Stamford, Connecticut to arrange for carriage of the entire Azteca America network on Charter.

If you would like to talk, my phone number is (760) 668-7777.

> Very truly yours,
>
> TARA BROADCASTING, LLC
>
> BY
>
> CLARK GAREN,
> ATTORNEY AT LAW,
> LICENSED IN CALIFORNIA AND TEXAS
> MANAGING MEMBER



Home Mail Search News Sports Finance Celebrity Weather Answers Flickr Mobile More

All Martin, search your mailbox Search Mail Search Web Home Martin

Compose

Inbox (10)
Drafts (8)
Sent
Archive
Spam
Trash (473)
Smart Views
Important
Unread
Starred
People
Social
Shopping
Travel
Finance
Folders
Recent

To keely.bostock@charter.com

CC Clark Clark

BCC

Thank you

Good Afternoon Keely,

It was a pleasure speaking with you this morning. I appreciate you taking the time from your very busy schedule to bring me up to date.

I've put your name on my calendar to all you the first week in March. If there is anything you need before we talk next, please contact me.

Regards,

Martin

Send Saved at 2:07 PM

Zappos Misses You
Please Come Back to Zappos & Finish Your Purchase! We Miss You.
zappos.com

hayneedle.com

| | |
|---|---|
| **Subject:** | Re: NAB |
| **From:** | Martin Serna (martinserna46@yahoo.com) |
| **To:** | Keely.Bostock@charter.com; |
| **Cc:** | clarkgaren@msn.com; |
| **Date:** | Friday, April 21, 2017 3:55 PM |

Will do.  Look forward to talking to you.

Martin


On Friday, April 21, 2017 3:24 PM, "Bostock, Keely" <Keely.Bostock@charter.com> wrote:


Hi Martin.   Not going to make it to NAB this year but let's connect when you guys are back.  Hope you enjoy your trip to Vegas!

On Apr 21, 2017, at 3:12 PM, Martin Serna <martinserna46@yahoo.com> wrote:

> Happy Friday Keely,
>
> Were you able to carve out some time in Las Vegas for Clark and me?
>
> You can reach me on my cell phones or at the Mirage Hotel.  I'll be there by Monday late morning.
>
> Looking forward to meeting you in person.
>
> Martin
>
> (760) 219-6121
>
> (760) 636-3871


The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you

**Subject:** Re: Spectrum

**From:** Bostock, Keely (Keely.Bostock@charter.com)

**To:** martinserna46@yahoo.com;

**Cc:** clarkgaren@msn.com;

**Date:** Tuesday, May 30, 2017 11:57 AM

Hi Martin. Have been in an unexpected negotiation.  Nothing you did!!!!! Will circle back with you as soon as I can.

On May 30, 2017, at 12:54 PM, Martin Serna <martinserna46@yahoo.com> wrote:

> Good Morning again, Keely,
>
> I'm not sure what I did that you haven't taken my calls or emailed me. We are just trying to find out where we stand with getting our station on the local Spectrum/Time Warner system.
>
> Clients and viewers that I've talked with are eager to have an alternative to Univision and Telemundo.
>
> Please, please, let me know where  we stand on getting our Azteca signal on your system.  If we need to make an in person meeting, we'll do that, if we need to make a payment, we'll do that......but without some communications from you or someone in your company, we don't know where we are in your process.
>
> Hoping to hear from you soon.
>
> Martin
>
> (760) 216-6121
>
> (760) 636-3871

The contents of this e-mail message and
any attachments are intended solely for the
addressee(s) and may contain confidential
and/or legally privileged information. If you
are not the intended recipient of this message
or if this message has been addressed to you

**Subject:** Re: Call

**From:** Bostock, Keely (Keely.Bostock@charter.com)

**To:** martinserna46@yahoo.com;

**Cc:** clarkgaren@msn.com;

**Date:** Monday, June 5, 2017 7:41 AM

Thanks Martin. I should free up this week to talk. I need to check in with the product team for their input. I'll reach out shortly.

On Jun 5, 2017, at 8:23 AM, Martin Serna <martinserna46@yahoo.com> wrote:

> Good Morning, Keely,
>
> Hope you had a restful weekend.  Just wondering if your negotiations are still on going. Hopefully, you're almost done so we can talk about our position on Spectrum/Time Warner.
>
> Please let me know.
>
> Thanks,
>
> Martin

The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Subject:**   Another week

**From:**   Martin Serna (martinserna46@yahoo.com)

**To:**   keely.bostock@charter.com;

**Cc:**   clarkgaren@msn.com;

**Date:**   Thursday, June 15, 2017 7:38 PM

Happy Friday Keely,

We're at the end of another disappointing week. I've called and texted and am still waiting to here from you.

I know how busy you must be, but at the same time I have a job to do. Getting our AZTECA affitiate on your Spectrum Time Warner System will not only be good for us, but it will be very, very good for the Hispanic viewer in the Palm Springs market.

If its possible, please call me tomorrow and let me know what your team has decided........its all I ask.

I'll be sitting by my phone.

Martin

**Subject:**   RE: Another week

**From:**   Bostock, Keely (Keely.Bostock@charter.com)

**To:**   martinserna46@yahoo.com; C-Tracy.Elliott@charter.com;

**Date:**   Monday, June 19, 2017 11:04 AM

Hi Martin,

Hope you had a great weekend. Was good to catch up last week. Please don't forget to send me over information on the local programming on the Azteca stream. Also, please note that the engineers field tested your signal and are unable to receive a good quality signal over the air. As such, any carriage would be predicated on you delivering us a good quality feed via fiber. You may want to start the process of determining your cost and the timing of such a build as we would need to know that prior to us entering into any carriage agreement. I have copied Tracy Elliot, who works with me, on this email and she can direct you if you have any questions about the specifics of the headend etc.

Best,

Keely

The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

6/20/17, 2:31 PM

| Subject: | TWC & Azteca |
| From: | Martin Serna (martinserna46@yahoo.com) |
| To: | keely.bostock@charter.com; |
| Cc: | clarkgaren@msn.com; |
| Date: | Monday, June 19, 2017 2:13 PM |

Hi Keely,

Thanks for your rapid response. Its evident that you are really working hard on our behalf.

I've been reviewing our progress with Clark Garen, our owner. He has put a lot of work, energy and money in putting his company together. He is aware of the need for fiber delivery and has made sure that our stations can and will be delivered on fiber.

As a matter of fact, he has High speed internet in our building through TWC and is dedicated to having one of the most modern television facilities.

I'm a little confused by the requirement to have a local show before we get carriage on TWC. When I ran the Telemundo affiliate, we did not have local programming until we introduced a local newscast. It took us about six months to establish that.

This "local" newscast was local only in name. We had to tape our newscast at 3pm so as not to interfere with our ABC live newscast at 6pm. Our 3pm newscast was re-run at 11pm. The newscast was/is the only local programming they are currently doing. The same is true for the local Univision station, with only one "live" local newscast at 6pm and re-run at 11pm. Just for perspective, Telemundo has been in the market for 19 years and Univision for 21years.

I think I mentioned to you that our plan is to start with live 5 minute news update within 60 days of being on your system. This would transition into a full 30 minute newscast.

Since we also have "Old Tyme TV" channel which features classic television shows from the 50's and 60's, we are able to run locally produced entertainment shows that I mentioned earlier. This gives us experience of producing live television.

So you can see that we have the capabilities and experience to produce live shows

on Azteca and provide a fiber fed signal to your headend. Again, we are offering to come to Colorado to meet with you and your team if necessary.

From a marketing stand point, the Coachella Valley is ready for another Spanish language station, with programming never seen before in the valley. Please help us provide this service soon.

Again, thanks for all your help.

Martin

**Subject:** Azteca on TWC/Spectrum

**From:** Martin Serna (martinserna46@yahoo.com)

**To:** keely.bostock@charter.com;

**Cc:** clarkgaren@msn.com;

**Date:** Monday, June 19, 2017 10:42 AM

Good Monday Keely,

Thanks for the talk on Friday. We really appreciate your help.

You had mentioned during our conversation that your team wanted to know what our affiliate is doing different then the national feed of Azteca. The answer is nothing at the moment. Azteca national feed is NOT on TWC/Spectrum. Through my son who worked at TWC/Spectrum in this market, one of his "perks" is a full Spectrum package. In short, we receive every channel that is available, except the MiLatino Plan. With all these stations available, there is NO AZTECA available, even with the MiLatino plan. In short, our AZTECA affiliate is the only AZTECA available in our market.

To answer your two questions:
1. We are prepared to pay **ALL** costs involved to send a fiber feed from our stations to TWC/Spectrum. We have been preparing for this eventuality for some time, so technically, we're ready.

2. While we don't currently have local programming on AZTECA, we do on our English affiliate, Old Tyme TV. We have four outstanding programs: **Solomon's Deli**, hosted by a Dr. Mike Solomon who in a doctor certified in both Eastern and Western medicines; **Granny Rats Acting School**, hosted by Connie Hunter advising viewers on acting and how to get into the acting profession; **Celebrities and More With Daun DeVore.** Hosted by Daun, she is an OXFORD educated lawyer and opera singer covering entertainment and political topics; The Jewish Cowboy, hosted by Clark Garen, whose program is an important and topical discussion on politics and current events using common sense.
Our plans for local programming on AZTECA is to produce live, local news breaks, eventually leading to our own 30 minutes newscasts. We are going to use the same strategy that I used at Telemundo: community involvement and become the communities advocate.

We are prepared to launch a mid five figure advertising campaign on local radio and newspaper announcing that we are now carried on Time Warner. Also, very

importantly, we are prepared to send our signal for Azteca and Old Tyme affiliates by fiber almost immediately.

Both Clark and I will be more then happy to travel to Colorado to meet with you and your team in person. Just say the word.

We're looking forward to hearing from you tomorrow or Wednesday so we can start serving every growing Hispanic viewership.

Martin

**Subject:**  RE: Azteca on TWC/Spectrum

**From:**  Bostock, Keely (Keely.Bostock@charter.com)

**To:**  martinserna46@yahoo.com;

**Date:**  Monday, June 19, 2017 11:04 AM

Hi Martin,

It looks like our emails may have crossed.  I had sent one asking about both (a) local programming on the Azteca feed and (b) advising that we are unable to receive a good quality signal over the air.  In order for us to further consider the launch of the Azteca programming, we will need to see local programming on the channel.  Once you have that in place, we can continue to explore the addition.   Please keep us up to date on your progress.

**From:** Martin Serna [mailto:martinserna46@yahoo.com]
**Sent:** Monday, June 19, 2017 11:42 AM
**To:** Bostock, Keely <Keely.Bostock@charter.com>
**Cc:** Clark Clark <clarkgaren@msn.com>
**Subject:** Azteca on TWC/Spectrum

Good Monday Keely,

Thanks for the talk on Friday. We really appreciate your help.

You had mentioned during our conversation that your team wanted to know what our affiliate is doing different then the national feed of Azteca. The answer is nothing at the moment. Azteca national feed is NOT on TWC/Spectrum.  Through my son who worked at TWC/Spectrum  in this market, one of his "perks" is a full Spectrum package.  In short, we receive every channel that is available, except the MiLatino Plan. With all these stations available, there is NO AZTECA available, even with the MiLatino plan. In short, our AZTECA affiliate is the only AZTECA available in our market.

To answer your two questions:
1. We are prepared to pay **ALL** costs involved to send  a fiber feed from our stations to TWC/Spectrum. We have been preparing for this eventuality for some time, so technically, we're ready.

2. While we don't currently have local programming on AZTECA, we do on our English affiliate, Old Tyme TV. We have four outstanding programs: **Solomon's Deli**, hosted by a Dr. Mike Solomon who in a doctor certified in both Eastern and Western medicines; **Granny Rats Acting School**, hosted by Connie

6/20/17, 2:35 PM

**Subject:** Re: Answer, Please

**From:** Bostock, Keely (Keely.Bostock@charter.com)

**To:** martinserna46@yahoo.com;

**Cc:** clarkgaren@msn.com;

**Date:** Thursday, June 22, 2017 4:33 PM

Hi Martin,
I apologize. I thought we did close the loop. In order to consider the launch of Azteca, from a low power multicast, we need to see local programming to differentiate it from the national feed. I was under the impression you had that, until the last email. After that, I had responded and asked that you please keep us informed once you start localizing and we can continue discussions at that time but until then, we will need to hold. Do you have timing for your localization plans?

On Jun 22, 2017, at 5:28 PM, Martin Serna <martinserna46@yahoo.com> wrote:

> Keely,
>
> Per the phone call I left this morning, would you please, send me an email or call me tomorrow and just tell me YES or NO.
>
> We complied with your request for information so we need a definite answer one way or the other. If your team can not make up their mind, we will have to proceed in another direction.
>
> Hope to hear from you tomorrow.
>
> Martin

The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying,

**EXHIBIT 3**

### LAW OFFICES OF CLARK GAREN
*Post Office Box 1790*
*Palm Springs, California 92263*
*(760) 323-4901*
*Fax: (760) 288-4080*

November 25, 2017
Mr. Alexis Johnson,
Vice-President, Content Acquisition,
Charter Communications, Inc.,
400 Atlantic Street, 10th Floor,
Stamford, Connecticut 06901
Via Federal Express, Next Morning Delivery

Keely Bostock,
Vice-President, Content Acquisition
1460 South Emerson Street,
Denver, Colorado 80210
Via Federal Express, Next Morning Delivery

Ms. Deborah Picciolo,
Vice-President Field Operations,
Charter Communications, Inc.
550 Continental Blvd.,
El Segundo, California 90245
Via Federal Express, Next Morning Delivery

Daniel J. Bollinger,
Vice-President and Associate General Counsel,
Charter Communications. Inc.,
Legal Department,,
12405 Powerscourt Drive,
St. Louis, Missouri 63131
Via Federal Express, next Day Delivery

Re:    Tara Broadcasting, L.L.C. vs. Charter Communications, Inc., individually and doing
       business as SPECTRUM; Alexis Johnson, an individual; Keely Bostock, an individual;
       Deborah Picciolo, an individual;

1

Re:     Notice of Intent to File suit in Superior Court of California, County of Riverside for:
        1. False Advertising in violation of
        California Business and Professions Code Section 17500
        2. Unfair Business Practices in violation of
        California Business and Professions Code Section 17200

Dear Mr. Johnson, Ms. Bostock, Ms. Picciolo and Bollinger:

I previously issued each of you notice on November 5, 2017 that I would be filing suit against each of you (except for Mr. Bollinger) for damages for violation of the Unruh Civil Rights Act and the California Anti-Trust act because of the refusal to distribute KAKZ on Spectrum.

A few days after I sent my November 5, 2017 letter, I received the enclosed brochure in the mail from Spectrum. This brochure constitutes false advertising in violation of California Business and Professions Code Section 17500 and constitutes an unfair business practice in violation of California Business and Professions Code Section 17200.

California Business and Professions Code Section 17500 reads as follows:

   **17500. False or misleading statements generally**

   "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by

2

imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

Throughout this brochure, it states that Spectrum delivers "live local broadcast channels". It does identify which live local broadcast channels it carries, and it does not state that it excludes carriage of any live local broadcast channels. Since KAKZ is a live broadcasts channel, and since Spectrum does not carry KAKZ, this brochure constitutes false and misleading advertising in violation of California Business and Professions Code Section 17500 and constitutes an unfair business practice in violation of California Business and Professions Code Section 17200 because it misleads the reader of the advertising to believe that Spectrum carries all local channels when it does not carry KAKZ. This means either that Spectrum is falsely stating that KAKZ is not a live local broadcast channel or that Spectrum is advertising that it carries all local broadcast channels when, in fact, it does not.

California Business and Professions Code Section 17200 reads as follows:

**17200. Definition**
As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

California Business and Professions Code Section 17203 provides for injunctive relief and reads as follows:

**17203. Injunctive relief; Court orders**
Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.

3

California Business and Professions Code Section 17204 grants standing to individual victims and reads as follows:

> ### § 17204. Actions for Injunctions by Attorney General, district attorney, county counsel, and city attorneys
> Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or a district attorney or by a county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or by a city attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association, *OR BY A PERSON WHO HAS SUFFERED INJURY IN FACT AND HAS LOST MONEY OR PROPERTY AS A RESULT OF THE UNFAIR COMPETITION.*

Recovery in a civil lawsuit for these violations is limited to recovery of actual damages and injunctive relief ordering the false and misleading advertising to stop. While actual damages from the false advertising would be minimal (as opposed to the Unruh Civil Rights damages which are substantial), the injunctive relief would be significant. The injunctive relief sought would **not** be for carriage of KAKZ; the injunctive relief sought would be to abate the false advertising by requiring future advertising and mailings by Spectrum stating that Spectrum carries local channels to either identifying the specific local channels Spectrum is carrying or identify the specific local channels Spectrum is not carrying. To do otherwise constitutes false and misleading advertising by Spectrum that KAKZ does not have live local programming. The advertising is false because KAKZ does, in fact, carry live local programming. This injunction would be in effect throughout the State of California, and would apply to all markets in which Spectrum provides cable services.

I have not yet heard a response to my November 5, 2017 letter. If Spectrum makes an arrangement to carry KAKZ, such an arrangement would deprive KAKZ of standing to pursue any of the false advertising or unfair business practices claims described above.

I am working on the Complaint discussed in my November 5, 2017 letter. This letter is to notify you the claims described herein for False Advertising and Unfair Business Practices will be added to the Complaint I am working on.

4

I was hopeful that me might resolve this issue without litigation, but since I have not yet received any response to my November 5, 2017 communication, it appears to me that there is no interest in settling or even discussing this matter. Therefore, when the Complaint is prepared, it will be filed and served without further notice to you. If any of you (except for Mr. Bollinger who is not being named as a defendant) wish to avoid the embarrassment of being personally served by a process server, you can let me know that you are willing to sign a Notice and Acknowledgment of Service by mail and return it to me. This will eliminate the need to have a process server personally deliver the lawsuit to you.

You should be aware that there are now 337 low power television stations located within the State of California. Each of these stations has the same rights to relief under the Unruh Civil Rights Act, the Cartwright Unfair Trade Act, and the False Advertising and Unfair Competition laws that KAKZ does. You should also be aware KAKZ is a member of LPTV Spectrum Rights Coalition, which maintains a web site at "www.lptvcoalition.com". This organization distributes a daily newsletter to all members and low power television stations. Once the KAKZ Compliant is filed with the Superior Court, news of the filing and a copy of the KAKZ filed Complaint with be distributed to all low power stations by the Low Power Television Coalition, and in particular to the 337 low power stations in California. If any of these California stations contact me, I can and will represent then in an independent legal action filed in each of California's 58 counties where the California Low Power Television stations are located.

Please govern yourselves accordingly,

Very truly yours,

LAW OFFICES OF CLARK GAREN

BY

CLARK GAREN

5

TIME WARNER CABLE IS NOW

# Spectrum›

**1ST MONTH FREE!\* WATCH LIVE LOCAL BROADCAST CHANNELS AND MORE FOR ONE LOW PRICE.**



SPECTRUM TV™ STREAM

# $19.95
per month

1st month FREE*

## NO CONTRACTS

Clark Garen or Current Resident
PO Box 1790
Palm Springs CA 92263-1790

005796

# SPECTRUM BENEFITS:

| Item No. | Description | |
|----|----|----|
| 01 | 1st month **FREE\*** | Included |
| 02 | Live local broadcast channels | Included |
| 03 | Watch **25+** networks on your devices, big and small | Included |
| 04 | 5,000 **FREE** On Demand titles | Included |
| 05 | Watch on all your devices at the same time with NO limits | Included |
| 06 | Risk-Free, 30-Day Money-Back Guarantee | Included |
| 07 | **NO** contracts or early termination fees | Included |

▼ **CALL 1-855-264-7248 TO CLAIM YOUR BENEFITS** ▼

SPECTRUM TV STREAM



# $19.95
per month

1st month FREE*

## NO CONTRACTS

No cable box required. No appointment needed.

## RESPOND BY 12/13/17
## CALL 1-855-264-7248

Ask about streaming with fast
Spectrum Internet™

OFLTRM94

88440001-002-02055480



*INTRODUCING*

# SPECTRUM TV™ STREAM

## Stream live TV on **your devices, big and small.**

## Start streaming live TV and On Demand today!

**Over 25 live TV channels,** including local broadcast stations, sports and current network hits.

# $19.95
per month


1st month FREE

 and many more...

---

### Start watching today

Download the Spectrum TV App to watch live TV anywhere in your home. Access the App on your tablet, smartphone and other portable devices.

Plus, use your tablet and smartphone to watch TV away from home. Simply download the channel app from your favorite networks and access your favorite programs with your Spectrum TV Stream username and password.


WATCH LIVE TV   FREE ON DEMAND

---

**$3** per mo each when you get all 5 for $15 more per month**

1st month FREE

### Get the best value on the best premium networks

Add the Spectrum Premium Pack and get over 10,000 On Demand titles and over 35 channels for only $15 more per month for **3** years.** That's only $3 each per network. **No other streaming provider offers 5 premium networks for this great price!**

HBO   SHOWTIME   THE MOVIE CHANNEL
STARZ   STARZ ENCORE

### Ask about streaming with fast Spectrum Internet™.

Spectrum Internet has the fastest STARTING speeds available for the price. Everyone in your home can surf and stream with no data caps or extra fees.

- Save money every month when you upgrade to fast Spectrum Internet.
- **FREE** Internet modem, don't pay a monthly rental fee.
- **FREE** Security Suite, stop paying for expensive virus protection software.


FREE MODEM   FAST SPEEDS

---

## SPECTRUM TV STREAM

# $19.95
per month

1st month FREE

## NO CONTRACTS

No cable box required. No appointment needed.

# RESPOND BY 12/13/17
# CALL 1-855-264-7248

Ask about streaming with fast Spectrum Internet™

Offer good through 12/13/17; subject to change; restrictions apply; valid only for named recipient, availability of offer based on service address and valid to qualified residential customers who have no outstanding obligation to Charter. *Spectrum TV Stream: First month free credit will appear on your monthly bill statement. Standard rates after first 30 days. **Spectrum Premium Pack: First month free credit will appear on your monthly bill statement. Price is $15/mo. for mos 2-12; year 2-3: $30/mo. for year 4, standard rates apply after year 4. Taxes, fees and surcharges extra. For Risk-Free, 30-Day Money-Back Guarantee, visit Spectrum.com/guarantee. Channel availability based on level of service. *Spectrum News and CW channels available in select markets only. Additional equipment may be required to access PEG channels. Account credentials may be required to stream some TV content online. Apps are free with corresponding level of service. Services subject to all applicable service terms and conditions, subject to change. Services not available in all areas. Restrictions apply. Time Warner Cable is a trademark of Time Warner Inc., used under license. All trademarks are the property of their respective owners. ©2017 Charter Communications.

OFLTRM94

**EXHIBIT 4**




*INTRODUCING*

# SPECTRUM TV™ STREAM

## Stream live TV on **your devices, big and small.**

### Start streaming live TV and On Demand today!

**Over 25 live TV channels,** including local broadcast stations, sports and current network hits.

$**19**^**95** per month


1st month **FREE***

         and many more...

---

### Start watching today

Download the Spectrum TV App to watch live TV anywhere in your home. Access the App on your tablet, smartphone and other portable devices.

Plus, use your tablet and smartphone to watch TV away from home. Simply download the channel app from your favorite networks and access your favorite programs with your Spectrum TV Stream username and password.



---

$**3**
per mo each when you get all 5 for $15 more per month**

### Get the best value on the best premium networks

Add the Spectrum Premium Pack and get over 10,000 On Demand titles and over 35 channels for only $15 more per month for **3** years.** That's only $3 each per network. **No other streaming provider offers 5 premium networks for this great price!**



### Ask about streaming with fast Spectrum Internet™.

Spectrum Internet has the fastest STARTING speeds available for the price. Everyone in your home can surf and stream with no data caps or extra fees.

- Save money every month when you upgrade to fast Spectrum Internet.
- **FREE** Internet modem, don't pay a monthly rental fee.
- **FREE** Security Suite, stop paying for expensive virus protection software.

FREE MODEM  FAST SPEEDS

---

## SPECTRUM TV STREAM

$**19**^**95** per month

1st month **FREE***

### NO CONTRACTS

No cable box required. No appointment needed.

# RESPOND BY 12/13/17
# CALL 1-855-264-7248

Ask about streaming with fast Spectrum Internet™

Offer good through 12/13/17; subject to change; restrictions apply; valid only for named recipient; availability of offer based on service address and valid to qualified residential customers who have no outstanding obligation to Charter. *Spectrum TV Stream: First month free credit will appear on your monthly bill statement. Standard rates after first 30 days. **Spectrum Premium Pack: First month free credit will appear on your monthly bill statement. Price is $15/mo. for mos 2-12; year 2-3; $30/mo. for year 4; standard rates apply after year 4. Taxes, fees and surcharges extra. For Risk-Free, 30-Day-Money-Back Guarantee, visit Spectrum.com/guarantee. Channel availability based on level of service. †Spectrum News and CW channels available in select markets only. Additional equipment may be required to access PEG channels. Account credentials may be required to stream some TV content online. Apps are free with corresponding level of service. Services subject to all applicable service terms and conditions, subject to change. Services not available in all areas. Restrictions apply. Time Warner Cable is a trademark of Time Warner Inc. used under license. All trademarks are the property of their respective owners. ©2017 Charter Communications.

TIME WARNER CABLE IS NOW

## Spectrum›

**1ST MONTH FREE!\* WATCH LIVE LOCAL BROADCAST CHANNELS AND MORE FOR ONE LOW PRICE.**



SPECTRUM TV™ STREAM

# $19 95
per month

**1st month FREE**

## NO CONTRACTS

Clark Garen or Current Resident
PO Box 1790
Palm Springs CA 92263-1790

005796

# SPECTRUM BENEFITS:

| Item No. | Description | |
|---|---|---|
| 01 | 1st month **FREE\*** | Included |
| 02 | Live local broadcast channels | Included |
| 03 | Watch 25+ networks on your devices, big and small | Included |
| 04 | 5,000 FREE On Demand titles | Included |
| 05 | Watch on all your devices at the same time with NO limits | Included |
| 06 | Risk-Free, 30-Day Money-Back Guarantee | Included |
| 07 | NO contracts or early termination fees | Included |

## ▼  CALL 1-855-264-7248 TO CLAIM YOUR BENEFITS  ▼

SPECTRUM TV STREAM

# $19 95
per month



1st month **FREE\***

## NO CONTRACTS

No cable box required. No appointment needed.

# RESPOND BY 12/13/17
# CALL 1-855-264-7248

Ask about streaming with fast Spectrum Internet™

OFLTRM94

88440001-002-02055480